## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

THE COUNTY COMMISSION OF
FAYETTE COUNTY, WEST VIRGINIA,
*Ex Rel.* ANTHONY CILIBERTI, ESQ.,
*Fayette County Prosecuting Attorney*,

               Plaintiffs,

v.                                      CIVIL ACTION NO.   2:22-cv-00441

GADSDEN, GAILLARD, AND WEST, LLC,
*a South Carolina Limited Liability Company*,
and DENNIS EUGENE WEST, *an Individual
and Resident of South Carolina*,

               Defendants.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Verified Complaint* (Document 1-2), the *Defendants' Motion to Dismiss All Counts of Plaintiff's Complaint* (Document 4), the *Memorandum of Law in Support of Defendants' Motion to Dismiss All Counts of Plaintiff's Complaint* (Document 5), the *Governmental Plaintiff's Response in Opposition to Defendants' Motion to Dismiss All Counts of Plaintiff's Complaint* (Document 16), and the *Reply in Support of Defendants' Motion to Dismiss All Counts of Plaintiff's Complaint* (Document 17), as well as all attached exhibits.   For the reasons stated herein, the Court finds that the motion should be denied.

### FACTUAL ALLEGATIONS

The Fayette County Prosecuting Attorney, Anthony Ciliberti, brought this action on behalf of the County Commission of Fayette County, West Virginia.   The Defendants are Gadsden,

Gaillard, and West, LLC, a commercial trucking service, and Dennis Eugene West, an officer and member of Gadsden, Gaillard, and West, LLC.   Mr. West was driving a tractor trailer on I-77 near Pax, Fayette County, West Virginia, on August 24, 2022, when the truck crashed and overturned, blocking both the northbound and southbound lanes of I-77.   The truck was carrying twelve 275-gallon totes of a chemical used as a marine cleaning agent, EMPIGEN® AS-F90.   The containers were breached and the chemical spilled, entering the "surface and subsurface soils, surface waters, surface water sediments and groundwater within the Paint Creek Watershed."   (Compl. at ¶ 4.) The EMPIGEN® AS-F90 is a hazardous waste that was released into the environment as a result of the crash.   The release of the chemical has adversely impacted groundwater and surface water resources, including "the loss of beneficial uses of these surface water and groundwater resources, specifically including the ability to use those water resources as a public drinking water supply or safe recreational water locations without incurring excessive treatment costs."   (*Id.* at ¶ 49.)

The Complaint alleges the following causes of action: Count One – Judicial Abatement of a Continuing Per Se Public Nuisance Declared by the General Law of West Virginia; Count Two – Judicial Abatement of a Continuing Per Se Public Nuisance Declared by Section V of Fayette Co. Ordinance No. 2018-001, Pursuant to Section XXII of that Ordinance, and Related Declaratory Relief; Count Three – Judicial Abatement of a Continuing Public Nuisance Pursuant to the Common Law of West Virginia; Count Four – Declaratory and Corresponding Injunctive Relief Providing for Recovery of (i) County Costs Incurred with Respect to the Subject Property; and (ii) Recovery of the County's Reasonable Attorneys' Fees and Court Costs Incurred Herein Pursuant to W. Va. Code § 7-1-3ff(h)(4); Count Five – Damages for Injury to, Loss of, and Destruction of Natural Resources Within Fayette County Pursuant to Section VI(a)(19)(E) of Fayette County

2

Public Nuisance Ordinance; and Count Six – Unjust Enrichment.   The Plaintiffs seek a variety of declaratory and monetary relief.[1]

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."   *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231,

---

[1] Portions of the prayer for relief reference coal mining waste and/or a defendant not named in this action, and appear to be pasted from an unrelated complaint.   Thus, the Court is uncertain as to the precise parameters of relief sought.

244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Defendants contend that Count One fails to allege the elements necessary to prove a public nuisance and relies on the false premise that the West Virginia Solid Waste Management Act establishes that all Open Dumps (as defined in the Act) are per se public nuisances.   They next argue that Count Two must be dismissed because the county Ordinance declaring certain

4

conditions to constitute a per se nuisance exceeded the county's authority.   They further argue that state law requires certain pre-suit procedures prior to seeking judicial abatement of a public nuisance, and the Plaintiff did not comply with those procedures.   They contend that Count Three must be dismissed because there is no allegation that the Defendants "are *maintaining* a continuing public nuisance."   (Def.s' Mem. at 14, emphasis in original.)   They argue that Count Four, like Count Two, fails because the Plaintiff did not follow the required pre-suit procedures.   In addition, the Defendants assert that Counts Four, seeking attorneys' fees and costs, and Count Five, seeking damages for injury, loss, and destruction of natural resources, seek forms of relief, rather than stating standalone causes of action.   They argue that the Complaint does not plead the elements of unjust enrichment, alleged in Count Six, and that the unjust enrichment claim is duplicative.

In response, the Plaintiff argues that "the Fayette County Commission is authorized to exercise the full range of legal authorities available to the Sovereign of this State under the Public Nuisance Doctrine embodied in the common law of the State of West Virginia," with the exception of imposition of felony-level criminal penalties.   (Pl.'s Resp. at 2.)   It contends that state law defines all open dumps to be a public nuisance, that all open dumps are illegal in West Virginia, and Count One therefore states a viable cause of action.   The Plaintiff argues that it is "expressly authorized…to declare by ordinance what is a Public Nuisance…and to provide for the proper abatement of such Public Nuisance."   (*Id*. at 15.)   It argues that the procedural requirements cited by the Defendants as to Counts Two and Four are not applicable because the claims related to the Ordinance arise under W. Va. Code § 7-1-3kk, not § 7-1-3ff, and as such the procedures set forth in §7-1-3ff are inapplicable.   The Plaintiff argues that its allegations, that the Defendants caused a public nuisance with continuing impacts and have failed to adequately abate the toxic

contamination, meet the pleading requirements as to Count 3.   The Plaintiff next contends that Count Four is permissible, and "any concerns of alleged violation of due process for lack of strict adherence to the citation-complaint-order administrative procedures outlined in § 7-1-3ff are wholly alleviated by submission of the matter to this Court's jurisdiction."   (*Id.* at 21–22.)   It argues that Count Five is a valid legal cause of action stating an independent basis for liability. The Plaintiff argues that the claim for unjust enrichment contained in Count Six pleads the elements of the claim, in that the Defendants' actions amount to shifting the remedial costs for which they are responsible to Fayette County.   The Plaintiff further notes that pleading in the alternative is permitted under the Federal Rules of Civil Procedure, and the claim is not duplicative simply because recovery may also be available under other legal theories.

### A. Count One

Count One seeks judicial abatement of a continuing per se public nuisance declared by the general law of West Virginia.   The Plaintiff relies on statutory language declaring that "[o]pen dumps are prohibited and it is unlawful for any person to create, contribute to, or operate an open dump…" to support its position that the Defendants are strictly liable for a common law public nuisance.   W. Va. Code § 22-15-10(a).   The Plaintiff additionally cites the preamble to the West Virginia Solid Waste Management Act, wherein the Legislature "finds that solid waste disposal has inherent risks and negative impact on local communities," including a finding that "uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people."   W. Va. Code § 22-15-1(c)(1).

West Virginia common law defines a public nuisance as "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-CV-00894, 2020 WL 5047131, at *9 (S.D.W. Va. Aug. 26, 2020) (Copenhaver, S.J.) (quoting *Hark v. Mountain Fork Lumber Co.*, 34 S.E. 2d 348, 354 (W. Va. 1945)).   "A nuisance per se, or a nuisance at law, is 'an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.'"   *Id.* at *11 (quoting *Harless v. Workman*, 114 S.E.2d 548, 552 (W. Va. 1960)).   "Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public."   *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 354 (W. Va. 1945).

Other judges in this district have considered similar claims asserting that open dumps constitute a per se public nuisance in West Virginia.   Chief Judge Johnston recently found that "the preamble to the WVSWMA cannot form the basis of the County's nuisance *per se* claim," and dismissed a per se public nuisance claim where the "alleged dumping occurred prior to the enactment of the WVSWMA [West Virginia Solid Waste Management Act]."   *Cnty. Comm'n of Fayette Cnty. v. Nat'l Grid NE Holdings 2 LLC*, No. 2:21-CV-00307, 2022 WL 4459475, at *8 (S.D.W. Va. Sept. 21, 2022) (Johnston, C.J.).   Judge Copenhaver found that a plaintiff had "plausibly alleged that such acts and omissions constitute a public nuisance per se for violating federal and state laws against open dumps," where a business allegedly disposed of waste, accepted waste from other entities, and allowed the open dump to exist on its property.   *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-CV-00894, 2020 WL 5047131, at *12 (S.D.W. Va. Aug. 26, 2020) (Copenhaver, S.J.).

Because the facts alleged herein differ from those in *National Grid*, the Court need not determine whether a per se public nuisance claim can be grounded on the preamble to the WVSWMA.   In *National Grid*, the allegations did not support a finding that the company had violated state law because the alleged dumping predated the enactment of the WVSWMA and the company had divested itself of the property at issue.   The Plaintiff herein alleges that the Defendants created an open dump when they spilled hazardous materials in a truck accident that occurred on August 24, 2022, well after the 1988 enactment of the WVSWMA.   As in *Courtland*, the allegations, if proven, support a finding that the improper disposal of waste violated federal and state laws against open dumps.   More generally, the allegations state a claim that the act or structure—the spill of EMPIGEN® AS-F90—is a nuisance "at all times and under any circumstances, regardless of location or surroundings."   *Harless v. Workman*, 114 S.E.2d 548, 552 (W. Va. 1960) (quoting from 66 C.J.S. Nuisances § 3, pp. 733 and 734).   The allegations accepted as true support the inference that an uncontrolled release of EMPIGEN® AS-F90 is necessarily harmful to the public, unlike, for instance, noise levels that may be a nuisance at midnight in a residential neighborhood, but not at noon in an industrial area.     Thus, the motion to dismiss as to Count One should be denied.

### B. Count Two

In Count Two, the Plaintiff seeks relief pursuant to Section XXII of Fayette County Ordinance No. 2018-001.   The Fayette County Commission enacted the Ordinance in 2018, relying on the authority granted to county commissions in W.VA. Code § 7-1-3ff and W.Va. Code § 7-1-3kk.   Section 7-1-3ff grants authority to county commissions to "adopt ordinances regulating the removal and clean up of any accumulation of refuse or debris, overgrown vegetation

or toxic spillage or toxic seepage located on private lands which is determined to be unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare, whether the result of natural or manmade force or effect."   W. Va. Code § 7-1-3ff(b).   It requires county commissions to "designate an enforcement agency," to include specified personnel.   *Id.* at § 7-1-3ff(c).   It further establishes specific procedures for initiation and review of complaints against "the owner or owners of the private land in question."   *Id.* at §7-1-33ff(f)(1)–(8).[2]   Section 7-1-3kk provides:

> In addition to all other powers and duties now conferred by law upon county commissions, commissions are hereby authorized to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance.   The ordinances may provide for a misdemeanor penalty for its violation.   The ordinances may further be applicable to the county in its entirety or to any portion of the county as considered appropriate by the county commission.

Chief Judge Johnston recently considered motions to dismiss in another case brought pursuant to the Fayette County Ordinance, *Cnty. Comm'n of Fayette Cnty. W. Virginia v. Nat'l Grid NE Holdings 2 LLC et al.*, No. 2:21-CV-00307 (S.D.W. Va. Sept. 21, 2022).   As Judge Johnston pointed out, the Ordinance contains a severance clause, and therefore any subsection that conflicts with state law or is otherwise enforceable may be severed, preserving the enforceability of the remainder of the Ordinance.   He severed certain challenged provisions, including Section VIII(b), explaining that this section improperly permits the Code Enforcement Agency to issue certain orders requiring people to "conduct such monitoring, testing, analysis, and reporting regarding any aspect of such Public Nuisance as the Code Enforcement Agency deems necessary

---

2 The Plaintiff alleges that the Defendants are liable as the party responsible for the spill of hazardous waste, not as owners of the property in question.

and proper," without establishing the type of process outlined in § 7-1-3ff(f).   (Fayette County Public Nuisance Abatement Ordinance § VIII(b)(1)(A), at Document 1-2 p. 109.)   In *National Grid*, Fayette County sought judicial enforcement of an abatement order issued by the county pursuant to the Ordinance, through procedures established by the Ordinance.   Because the Ordinance's procedures did not correspond with the procedures established by state law in § 7-1-3ff, Judge Johnston found that the provisions of the Ordinance permitting the County to issue orders and commence a civil action to enforce those orders were *ultra vires*.   *Cnty. Comm'n of Fayette Cnty. v. Nat'l Grid NE Holdings 2 LLC*, No. 2:21-CV-00307, 2022 WL 4459475, at *18 (S.D.W. Va. Sept. 21, 2022).

Here, Fayette County does not ask the Court to enforce an order issued in accordance with the provisions that Judge Johnston found should be severed.   It, instead, seeks judicial abatement of a public nuisance that the County Commission has found to exist pursuant to other provisions of the Ordinance.   Judge Johnston found that "because the provisions of the 2018 Ordinance at issue in this case [describing conditions that constitute a public nuisance] seem to codify the common law doctrine of public nuisance, the County did not exceed its statutory authority in declaring certain acts and conditions nuisances in the 2018 Ordinance."   *Id.* at 15.   The Defendants do not specify the provision(s) of the Ordinance applicable to the facts presented that they assert improperly designate some condition or activity to be a nuisance.   The Plaintiff will ultimately have the burden of establishing a public nuisance.   A hazardous waste spill that contaminates soil and water is not beyond the scope of conditions already considered to be a public nuisance under West Virginia law.   Thus, there is no conflict between the Ordinance and state law

that would necessitate severing any provision of the Ordinance as presented by these facts. Therefore, the motion to dismiss as to Count Two should be denied.

### C. Count Three

Count Three seeks judicial abatement of a continuing public nuisance pursuant to the common law of West Virginia.   As discussed with respect to Count One, West Virginia common law defines a public nuisance as "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons."   *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-CV-00894, 2020 WL 5047131, at *9 (S.D.W. Va. Aug. 26, 2020) (Copenhaver, S.J.) (quoting *Hark v. Mountain Fork Lumber Co.*, 34 S.E. 2d 348, 354 (W. Va. 1945)).   In discussing whether a claim was barred by the statute of limitations, the West Virginia Supreme Court of Appeals explained that "[a] public nuisance action usually seeks to have some harm which affects the public health and safety abated. Thus, until such harm is abated, the public nuisance is continuing and the statute of limitations does not accrue."   *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 925 (W. Va. 1997).   "[N]uisance is a flexible area of the law that is adaptable to a wide variety of factual situations."   *Sharon Steel Corp. v. City of Fairmont* 334 S.E.2d 616, 621 (W. Va. 1985) (collecting nuisance cases).

Because the Defendants do not raise a statute of limitations defense,[3] whether the alleged public nuisance is "continuing" is of little legal significance.   To the extent it matters, the Plaintiff has pled that the harm caused by the spill of hazardous materials is ongoing.   The Defendants further contend that they are not "maintaining" the alleged public nuisance because they do not own the impacted property, relying on cases that involved nuisance claims against property

---

3  The Plaintiff initiated this action within one month of the tractor-trailer accident.

owners.[4]   They cite no cases for the proposition that an entity that causes a public nuisance cannot be liable unless it owns or leases real property involved in the nuisance, and the Court declines the invitation to create an exception so inconsistent with the flexibility and basic principles of nuisance law. The Plaintiff alleges that the Defendants "maintained" the nuisance by spilling hazardous materials and failing to abate the ensuing harm.   Those allegations are sufficient to state a claim. Thus, the motion to dismiss Count Three must also be denied.

### D. Counts Four and Five

Count Four seeks declaratory and corresponding injunctive relief providing for recovery of costs incurred with respect to the subject property, as well as attorneys' fees and court costs. Count Five seeks damages for injury to, loss of, and destruction of natural resources within Fayette County.   The Defendants seek to dismiss both on the basis that they are not standalone causes of action, but instead seek a form of relief.   In addition, they contend that the Plaintiff did not follow the proper procedures as to Count Four.

As discussed with respect to Count Two, the procedures set forth in W. Va. Code § 7-1-3ff(f) are applicable to certain types of complaints brought against property owners.   W. Va. Code § 7-1-3ff(h), however, permits civil proceedings against property owners or "other responsible part[ies]" to recover, *inter alia*, "payment of all costs incurred by the county with respect to the property and for reasonable attorney fees and court costs incurred in the prosecution of the action."

---

4 The Defendants also rely on the recent decision in *City of Huntington v. AmerisourceBergen Drug Corp.*, Case No. 3:17-cv-01362, 2022 WL 2399876 (S. D. W. Va. July 4, 2022) (Faber, S.J.), wherein the Court found the law of public nuisance inapplicable to distribution of opioids by pharmaceutical distributors.   The facts alleged herein fall squarely within the traditional realm of public nuisance, involving public property or resources, and the Court finds the discussion in *AmerisourceBergen* of little relevance, given the vastly different factual scenarios at issue.

W. Va. Code § 7-1-3ff(h)(4).   Thus, Count Four sets forth a form of relief available to the Plaintiffs should they prove their allegations.

Although the Defendants are correct that Counts Four and Five seek forms of relief rather than stating independent causes of action, that does not mandate dismissal.   The Court has found that the underlying causes of action are not subject to dismissal, and so the forms of relief sought in Counts Four and Five may likewise proceed, although, of course, the Plaintiff would be unable to obtain the relief sought without proving the underlying legal claims.

          *E. Count Six*

Count Six sets forth a claim for unjust enrichment.   "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (quoting *Dunlap v. Hinkle,* 317 S.E.2d 508, 512 n. 2 (W. Va. 1984)).   "To maintain a claim of unjust enrichment, the following elements must be proven: (1) a benefit conferred upon the defendant, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."  *Barker v. Naik*, No. 2:17-CV-04387, 2018 WL 3824376, at *5 (S.D.W. Va. Aug. 10, 2018) (Johnston, C.J.) (internal quotation marks and punctuation omitted).

The Defendants rely largely on Chief Judge Johnston's opinion in *National Grid*, dismissing an unjust enrichment claim.   Therein, Judge Johnston reasoned that "the County failed to plead that it has undertaken any clean-up activities," instead relying only on costs incurred to bring the enforcement action—which Judge Johnston found was *ultra vires*.  *Cnty. Comm'n of Fayette Cnty. v. Nat'l Grid NE Holdings 2 LLC*, No. 2:21-CV-00307, 2022 WL 4459475, at *19

(S.D.W. Va. Sept. 21, 2022).   In this case, however, the Plaintiff does allege that it "has incurred necessary expense to respond to the per se public nuisance conditions existing within the subject watershed caused entirely by Defendants, and in so doing has conferred and is conferring an economic benefit on each of the Defendant[s]" based on the Defendants' liability "for all costs incurred and to be incurred for the timely and competent investigation and abatement of the public nuisance conditions that they each created and contributed to."   (Compl. at ¶ 94) (internal emphasis omitted.)   If the Plaintiff incurred expenses that the Defendants should rightfully bear under the law, that may constitute a benefit conferred upon the Defendants.   The litigation and underlying process demonstrate that the Defendants are aware of the benefit, and a fact-finder could determine that it would be inequitable and unconscionable for the Defendants to retain that benefit.   Thus, the Plaintiff has adequately pled the elements of unjust enrichment.

The Defendants further contend that the unjust enrichment claim is duplicative because the other claims "would provide a sufficient remedy if successfully prosecuted."   (Def.s' Mem. at 20.)   In a recent decision, the Northern District of West Virginia permitted a plaintiff to plead both a breach of contract and unjust enrichment claim, noting that he could not recover under both theories but was "entitled to plead them in the alternative at this point of the litigation."   *Heater v. Gen. Motors, LLC*, 568 F. Supp. 3d 626, 642 (N.D.W. Va. 2021).   Double recovery, of course, is not permitted, and should factual development of the claims establish that the Plaintiff could prevail on the unjust enrichment claim *only* after also prevailing on, and obtaining full recovery under, the nuisance claims, it may be improper to permit both claims to be presented.   At this stage, however, the Plaintiff has pled facts that, if true, would establish the elements of an unjust

14

enrichment claim, and the Federal Rules of Civil Procedure permit pleading alternative theories of liability.   Therefore, the motion to dismiss Count Six should be denied.

### CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion to Dismiss All Counts of Plaintiff's Complaint* (Document 4) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    March 8, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA