## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT, WEST VIRGINIA
## CHARLESTON DIVISION

**COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINIA,**
a Political Subdivision of the State of W. Va.

- **Plaintiff,**

&

**ANITA STEWART, D.O.**
**FAYETTE CO. HEALTH OFFICER,**
Fayette Co. Health Department,

- **Plaintiff,**

*Ex Rel.***: ANTHONY CILIBERTI, JR., ESQ.,**
**Fayette Co. Prosecuting Attorney,**

**Relator,**

v.

**GADSDEN, GAILLARD, AND WEST LLC,**
a dissolved South Carolina Limited Liability Company**;**

- **Defendant,**

&

**DENNIS EUGENE WEST,**
an Individual & Resident of South Carolina,

- **Defendant,**

&

**INTEGON NATIONAL INSURANCE COMPANY,** a North Carolina Corporation, solely to the extent of proceeds available pursuant to Small Fleet Advantage Risk Retention Group, Inc. liability insurance policy number FCA00000100931-00, for the liability insurance coverage provided pursuant to which policy it is legally responsible, providing liability insurance coverage to GADSDEN, GAILLARD, AND WEST LLC and DENNIS EUGENE WEST for each of their liability to the Governmental

Case No. **2:22-cv-00441**

**Hon. Irene C. Berger, U.S.**
**District Court Judge, Presiding**

**VERIFIED SUPPLEMENTAL COMPLAINT**



Plaintiffs for all Public Liability and Covered    }
Pollution Costs or Expenses alleged herein;    }
                                                 }
                              - **Defendant,**    }
                                                 }
                                                 }

## VERIFIED SUPPLEMENTAL COMPLAINT FOR:

**(1)** **JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCE PURSUANT TO THE GENERAL LAW OF WEST VIRGINIA;**

**(2)** **JUDICIAL ABATEMENT OF PUBLIC NUISANCE CONDITIONS ENDANGERING PUBLIC HEALTH PURSUANT TO W. VA. CODE § 16-3-6;**

**(3)** **JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCE DECLARED BY SECTION V OF FAYETTE CO. ORDINANCE NO. 2018-001 PURSUANT TO SECTION XXII OF THAT ORDINANCE, RECOVERY OF PUBLIC NUISANCE ABATEMENT ACTION COSTS INCURRED AND TO BE INCURRED PURSUANT TO SECTIONS VI AND XXII OF THAT ORDINANCE, AND RELATED DECLARATORY RELIEF;**

**(4)** **JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE PURSUANT TO THE COMMON LAW OF WEST VIRGINIA;**

**(5)** **DECLARATORY AND INJUNCTIVE RELIEF PROVIDING FOR RECOVERY OF: (a) COUNTY ABATEMENT ACTION COSTS INCURRED WITH RESPECT TO THE SUBJECT PROPERTY; AND (b) RECOVERY OF THE COUNTY'S REASONABLE ATTORNEYS' FEES AND COURT COSTS INCURRED HEREIN; ALL PURSUANT TO W. VA. CODE § 7-1-3ff(h)(4)**

**(6)** **"DIRECT ACTION" PURSUANT TO SECTION VI(j) OF THE FAYETTE COUNTY PUBLIC NUISANCE ABATEMENT ORDINANCE TO ESTABLISH THE LIABILITY OF EACH OF THE INSURER DEFENDANTS HEREIN TO PAY FOR OR PERFORM THE REMEDIAL LIABILITIES IMPOSED UPON EITHER OR BOTH OF THEIR INSUREDS, DEFENDANTS GADSDEN, GAILLARD, AND WEST, LLC, AND DENNIS EUGENE WEST, BY THAT ORDINANCE SUBJECT ONLY TO THE REMAINING LIMITS OF LIABILITY, WHERE APPLICABLE, UNDER, AND THE TERMS AND CONDITIONS OF, THE LIABILITY INSURANCE POLICY THE INSURER RESPONDENT ISSUED TO THOSE INSUREDS;**

**(7)** **DAMAGES FOR INJURY TO, LOSS OF, AND DESTRUCTION OF *NATURAL RESOURCES* WITHIN FAYETTE COUNTY PURSUANT TO**

**SECTION VI(a)(1-9)(E) & (h) OF THE FAYETTE CO. PUBLIC NUISANCE ABATEMENT ORDINANCE;**

**(8)** **UNJUST ENRICHMENT**

# TABLE OF CONTENTS

I.    SYNOPSIS OF THE CASE.................................................................7

II.   INTRODUCTION..........................................................................8

III.  NATURE OF THIS GOVERNMENTAL CONTINUING PUBLIC
      NUISANCE ABATEMENT CASE....................................................10

      (a)  Fact Giving Rise to the Continuing Public Nuisance Condition
           Alleged Herein: ...............................................................10

      (b)  The Legal Origin and Nature of the Governmental Plaintiffs'
           Continuing Public Nuisance Abatement Authority Asserted Herein: ......19

      (c)  Governmental Plaintiffs' Prosecutorial Purposes and Goals
           in this Public Nuisance Abatement Action: ....................................21

IV.   JURISDICTION AND VENUE..........................................................25

V.    THE PARTIES.............................................................................26

VI.   DEFINITIONS.............................................................................30

VII.  ALLEGATIONS COMMON TO ALL COUNTS .....................................37

VIII. CAUSES OF ACTION ...................................................................39

      COUNT ONE: ...........................................................................39

      JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC
      NUISANCE DECLARED BY THE GENERAL LAW OF WEST VIRGINIA

      (a)  The Public Nuisance Doctrine under West Virginia Law:
           *Per Se* Public Nuisances: ...................................................39

      (b)  The Very Existence of an Open Dump within West Virginia Is
           prohibited by the General Law of West Virginia and Each
           Such Open Dump Is Expressly Declared by the General Law
           of West Virginia to be a "Public Nuisance and a Clear and
           Present Danger to People" .....................................................40

      COUNT TWO: ...........................................................................47

      JUDICIAL   ABATEMENT   OF   A   CONTINUING   PUBLIC
      NUISANCE ENDANGERING PUBLIC HEALTH PURSUANT TO
      W. VA. CODE § 16-3-6

      COUNT THREE: .......................................................................49

JUDICIAL ABATEMENT OF A CONTINUING *PER SE PUBLIC NUISANCE* DECLARED BY SECTION V OF FAYETTE CO. ORDINANCE NO. 2018-001 PURSUANT TO SECTION XXII OF THAT ORDINANCE, RECOVERY OF *PUBLIC NUISANCE ABATEMENT ACTION COSTS* INCURRED AND TO BE INCURRED PURSUANT TO SECTIONS VI AND XXII OF THAT ORDINANCE, AND RELATED DECLARATORY RELIEF:

Abatement of a *Public Nuisance* Declared in Section V(b) of the FCoWV Public Nuisance Abatement Ordinance – The Open Dumps (*i.e.,* all places within the Subject Watershed where the Released Solid Waste has or hereafter comes to be located) within the Subject Watershed Are a *Per Se* Public Nuisance Pursuant to the W. Va. Solid Waste Management Act, W. Va. Code §§ 22-15-1(c)(1) and W. Va. Common law and Are, Therefore, Each a *Public Nuisance* Pursuant to Section V(b) of that Ordinance: ....................................................................57

Abatement of a *Public Nuisance* Declared in Section V(a)(6) of the FCoWV Public Nuisance Ordinance – Disposal of Any Waste, or Hazardous Waste, Which Is Detrimental to or Impairs Any Beneficial Uses within Fayette Co. of any Waters of the State or other *Natural Resource*: ...............................................………59

(a) Abatement of a *Public Nuisance* Declared in Section V(a)(10), Subparagraphs (1) and (3) of the FCoWV Public Nuisance Abatement Ordinance – Release or Disposal of any Hazardous Waste, Waste, or Pollutant or Contaminant at or Emanating from Any *Facility* which Causes, or Contributes to the Presence in any *Waters of the State* within Fayette Co. of: (a) Distinctly Visible Floating or Settleable Solids, Suspended Solids, Scum, Foam or Oily Slicks in the Receiving Waters of the State; or (b) Offensive Taste or Odor in or Emanating from any Receiving *Waters of the State*: …………………………….………61

**COUNT FOUR:** …………………………………………..…………….…........64

JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE PURSUANT TO THE COMMON LAW OF W. Va.

**COUNT FIVE** …..……………………………………………..............………67

DECLARATORY AND INJUNCTIVE RELIEF PROVIDING FOR RECOVERY OF: (i) COUNTY COSTS INCURRED WITH RESPECT TO PUBLIC NUISANCE RESPONSE ACTIONS REGARDING THE SUBJECT WATERSHEDS; AND (ii)

RECOVERY OF THE COUNTY'S REASONABLE ATTORNEYS' FEES AND COURT COSTS INCURRED HEREIN; ALL PURSUANT TO W. VA. CODE § 7-1-3ff(h)(4)

**COUNT SIX:** ..............................................................................**74**

"DIRECT ACTION" PURSUANT TO SECTION VI(j) OF THE FAYETTE CO. PUBLIC NUISANCE ABATEMENT ORDINANCE TO ESTABLISH THE LIABILITY OF EACH OF THE INSURER DEFENDANTS HEREIN TO PAY FOR OR PERFORM THE REMEDIAL LIABILITIES IMPOSED UPON EITHER OR BOTH OF THEIR INSUREDS, REMEDIAL DEFENDANTS GADSDEN, GAILLARD, AND WEST, LLC, AND DENNIS EUGENE WEST, BY THAT ORDINANCE SUBJECT ONLY TO THE REMAINING LIMITS OF LIABILITY, WHERE APPLICABLE, UNDER, AND THE TERMS AND CONDITIONS OF, THE LIABILITY INSURANCE POLICY THE INSURER DEFENDANT ISSUED TO THOSE INSUREDS;

**COUNT SEVEN:** ...........................................................**77**

DAMAGES FOR INJURY TO, LOSS OF, AND DESTRUCTION OF *NATURAL RESOURCES* WITHIN FAYETTE COUNTY PURSUANT TO SECTION VI(a)(1-9)(E) & (h) OF THE FAYETTE CO. PUBLIC NUISANCE ABATEMENT ORDINANCE

**COUNT EIGHT:** ...........................................................**79**

UNJUST ENRICHMENT

IX.   PRAYER FOR RELIEF.............................................**81**

### I.   SYNOPSIS OF CASE:

Late in the evening of August 24, 2022, **Remedial Defendant** DENNIS EUGENE WEST ("WEST") lost control of and overturned a tractor trailer truck he was driving on I-77 in Fayette County, WV, which truck was owned and operated by **Remedial Defendant** GASDEN, GAILLIARD AND WEST, LLC ("GG&WLLC"), a South Carolina Limited Liability Co. of which Defendant WEST was member and officer.  At the time of the crash, the tractor trailer truck was carrying a cargo of EMPIGEN® AS-F90, an industrial cleaning agent and a Hazardous Material.  As a result of the crash, thousands of gallons of the Hazardous Material were **Released** into the **Environment** within the nearby Skitter Creek watershed proximate to the point at which Skitter Creek discharges into Paint Creek, which flows through Fayette and Kanawha Counties.  This Hazardous Materials Spill Event contaminated the surface soils, subsurface soils, groundwater, surface waters, and surface water sediments within the affected areas of the Skitter Creek watershed and many miles of the Paint Creek watershed downgradient of the crash site (*i.e.,* the "**Subject Watersheds**") and resulted in a substantial Fish Kill Event in those watersheds.  Promptly after the Spill Event, the Emergency Response Office of the W. Va. Department of Environmental Protection responded and for the next several days conducted initial containment and site clean-up **Response** Actions (*i.e.,* "**Immediate Response Measures**" or "**IRMs**").

Following completion of the IRMs, continuing foaming of the waters in the **Subject Watersheds** has been observed following rain events, and Fish Kills are continuing to be observed in those watersheds.  Following site inspection and private water well sampling efforts in the **Subject Watersheds** by authorized officers of the Fayette Co. and Kanawha Co. Departments of Health, and by the Fayette Co. Code Enforcement Agency, the Governmental Plaintiff herein have determined that adequate protection of the Public Health, Safety, Welfare and the ***Environment***, requires the timely and competent commencement and completion of a **Remedial Investigation** and **Feasibility Study** ("**RI/FS**") of the impacted environment and any resulting endangerments of health or the environment conducted in compliance with the requirements of the National Oil and Hazardous Substances Pollution Contingency Plan ("**NCP**"), 40 C.F.R., Part 300.

By commencement of this civil action, the Governmental Plaintiff seeks from this

Court:  **(1)** a Permanent Injunction in the nature of a Judicial Public Nuisance Abatement Order requiring:  (1) the **Remedial Defendants**, jointly and severally, timely to reimburse all reasonable governmental Response Costs that have been incurred to date, timely to pay all properly incurred future **Abatement Action Costs** to be incurred by the Governmental Plaintiff herein to conduct the required **RI/FS,** and to implement any interim or final abatement actions that the Court may require based upon the results of the **RI/FS**; **(2)** a Permanent Injunction requiring the **Insurer Defendant** timely to pay all costs imposed herein upon its insureds, the **Remedial** Defendants, subject only to the limits of liability set forth in the liability insurance policy it issued to the **Remedial Defendants** that lawfully apply with respect to such costs; and **(3)** to appoint herein, pursuant to Fed. R. Civ. P., Rule 56, a Special Master empowered to see to the timely and effective implementation of this Court's Orders herein, and to hear and adjudicate in the first instance all disputes between the Parties that may arise under this Court's Orders herein, and to make a Report and Recommendation to this Court regarding the final disposition of any such disputes.

## II.  <u>INTRODUCTION</u>:

1.  Plaintiffs' Relator, Anthony Ciliberti, Jr., Esq., the duly elected Fayette County Prosecuting Attorney, brings this civil action in the name of, and on behalf of:

  **(a)**  The COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINIA[1] (hereinafter:  "Governmental Plaintiff"), pursuant to the express authority conferred upon him by:  (1) W. Va. Code § 7-4-1(a)[2]; and (2) Section XXII of the Fayette Co. Ordinance 2018-001[3], entitled "Fayette County Comprehensive Public Nuisance

---

[1]  W. Va. Code § 7-1-1(a) conveys to each County Commission within West Virginia the authority to sue and be sued in its own name.

[2]  W. Va. Code § 7-4-1(a) provides that each Prosecuting Attorney within W. Va. shall have the authority and responsibility "to advise, attend to, bring, prosecute, or defend, as the case may be, all matters, actions, suits, and proceedings in which such county . . . is interested."

[3]  Section **XXII** of Fayette Co. Ordinance 2018-002 provides, in relevant part:

  With respect to an actual or imminently threatened ***Public Nuisance***, or with respect to any act or condition which is detrimental to any beneficial uses within Fayette County of any **Natural**

Abatement Ordinance" (hereinafter: "FCoWV Public Nuisance Abatement Ordinance"), a complete copy of which is attached to the Governmental Plaintiff's original Complaint herein as **Exhibit 1**; and

**(b)** Public Health Governmental Plaintiff, ANITA STEWART, D.O., FAYETTE COUNTY HEALTH OFFICER (hereinafter: "Public Health Governmental Plaintiff" or "**Fayette Co. Health Officer**"), pursuant to the authority vested in her by W. Va. Code § 16-3-6[4].

The Governmental Plaintiffs, by their undersigned Relator, makes these allegations upon

---

**Resource** owned by the State of West Virginia or Fayette County or held in trust by either for the benefit of present and future generations of the public, **the Fayette County Prosecuting Attorney may, in addition to or in lieu of any other remedy available to Fayette County, bring a civil action in the name of the Fayette County Commission in any court of competent jurisdiction,** and may seek in any such action any or all of the following forms of relief, and upon presentation to the court of the proof required by law on the required elements of it claims under applicable law, non-exclusively including this Ordinance, the court shall award the Fayette County Commission:

> **(1)** an injunction in the form of a judicial public nuisance abatement order, requiring the liable party timely and competently to abate the ***Public Nuisance*** consistent with the applicable requirements of this Ordinance at their sole cost, under the supervision and oversight of the Fayette County Code Enforcement Agency;
>
> \*\*\*        \*\*\*        \*\*\*        \*\*\*        \*\*\*
>
> **(3)** recovery of all **Abatement Action Costs** incurred by Fayette County with respect to such **Public Nuisance;**
>
> \*\*\*        \*\*\*        \*\*\*        \*\*\*        \*\*\*
>
> **(6)** where appropriate, a declaratory judgment on liability for further ***Abatement Action Costs*** to be incurred by the County with respect to the ***Public Nuisance*** in accord with the provisions of Section **VI(g)** of this Ordinance; …
>
> **(7)** recovery of such compensatory damages, specifically including Natural Resource damages pursuant to Section **VI(a)(l-9)(E)**, as may be available to Fayette County by law with respect to such **Public Nuisance;**

[4] W. Va. Code § 16-3-6 provides, in relevant part:

> [A]ny county or municipal health officer shall inquire into and investigate all nuisances affecting the public health within his jurisdiction; and . . . any such officer or the county commission of any county . . . is authorized and empowered to apply to the circuit court of the county in which any such nuisance exists . . . for an injunction forthwith to restrain, prevent or abate such nuisance.

knowledge as to themselves and upon information and belief as to all other matters:

## III.    <u>NATURE OF THIS CONTINUING PUBLIC NUISANCE ABATEMENT CASE</u>:

### (a)   **Facts Giving Rise to the Continuing Public Nuisance Condition Alleged Herein:**

**2.**    Until its Dissolution as a South Carolina Limited Liability Company effective August 25, 2022, the day after the Spill Event in Fayette County, **Remedial Defendant GADSDEN, GAILLARD, AND WEST LLC** operated a licensed, commercial trucking service in interstate commerce from its home office in South Carolina.

**3.**    At approx. 2338 hours EST on the evening of August 24, 2022, a tractor trailer truck owned and operated by **Remedial Defendant** GADSDEN, GAILLARD, AND WEST LLC and driven by **Remedial Defendant** DENNIS EUGENE WEST, an officer of GADSDEN, GAILLARD, AND WEST LLC, crashed and overturned in the northbound lane of I-77 in the area near the 62.5 mile marker in Pax, Fayette Co., W. Va., blocking both northbound and southbound lanes of I-77.  The photograph below is a fair and accurate representation of the overturned tractor trailer truck on the I-77 Skitter Creek Bridge on the morning following the Spill Event:



The next following picture is a fair and accurate representation of the crash site on the morning following the crash:



4.     At the time of the crash, the tractor trailer was hauling as cargo twelve (12) two hundred and seventy-five (275) gallon totes of the liquid, commercial chemical product EMPIGEN® AS-F90, Chemical Abstract Service ("CAS") Number 68140-01-2, comprising an aqueous solution of Alkyl Dimethylamine, a chemical product primarily used under strictly controlled conditions as an industrial cleaning agent.  A copy of the Material Safety Data Sheet ("MSDS") for EMPIGEN® AS/F90 that its manufacturer is required by federal law to prepare is attached hereto as **EXHIBIT 1** and incorporated herein by reference.

5.     As a result of the crash event, the containers of the EMPIGEN® AS-F90 were breached and more than two thousand (2,000) gallons of the contents of those containers was spilled and **Released** into the **Environment**, including the surface and subsurface soils, surface waters, surface water sediments, and groundwater within the Skitter Creek Watershed in Fayette Co. proximate to where Skitter Creek discharges into Paint Creek, which flows in both Fayette Co.

and, downstream of the Spill Event, in Kanawha Co., W. Va. (hereinafter sometimes referred to as the: "**Subject Watersheds**.")

6.    For purpose of the U.S. Department of Transportation ("USDOT") and the Occupational Safety and Health Administration of the U.S. Department of Health and Human Services ("OSHA"), EMPIGEN® AS-F90 is classified, pursuant to the Hazard Communication Standard ("OSHA/HCS") set forth in 29 C.F.R. § 1910.1200, as a "**Hazardous Material**."  Pursuant to the OSHA//HCS, EMPIGEN® AS-F90 has been assigned these specific classifications:  **ACUTE TOXICITY (Oral)** – Category 4; **SKIN CORROSION** – Category 1B; and **SERIOUS EYE DAMAGE** – Category 1.  Applicable federal hazardous materials transportation regulations require that any transportation of EMPIGEN® AS-F90 be prominently placarded with the Signal Word:  **DANGER**, and the following Hazard Statements:  **H302 – Harmful if Swallowed**; and **H314 – Causes Severe Skin Burn and Eye Damage**.

7.    As is further alleged in detail in Paragraphs 24 and 25 of this Complaint, once spilled or **Released** into the *Environment*, EMPIGEN® AS/F90 is a **Solid Waste**, a **Hazardous Waste**, and a **Pollutant or Contaminant** under the applicable laws of West Virginia, specifically including the West Virginia Solid Waste Management Act, W. Va. Code Chapter 22 and the FCoWV Public Nuisance Abatement Ordinance.

8.    Officers of the W. Va. State Police and Deputy Sheriffs from the Office of the Fayette Co. Sherriff immediately responded to this crash/Hazardous Materials Spill Event, the necessary response to which closed both Northbound and Southbound lanes of I-77 for approximately twenty (20) hours.

9.    Once on-scene, Fayette Co. Deputy Sheriffs provided:  **(a)** continuous site security and traffic control in the vicinity of the crash/Hazardous Materials Spill Event for nearly twenty-four

(24) hours; and **(b)** promptly notified the Office of the Fayette County Commission/Fayette County Code Enforcement Agency[5] (hereinafter:    "**FCoWV  CEA**") of the occurrence of the crash/Hazardous Materials Spill Event.

10. Upon arriving at the scene of the crash/Hazardous Materials Spill Event, a Fayette Co. Deputy Sheriff contacted the driver of the overturned tractor trailer, **Remedial Defendant** DENNIS EUGENE WEST, and there and then detected the odor of an alcoholic beverage on his breath. After **Remedial Defendant** DENNIS EUGENE WEST failed four (4) field sobriety tests. he was placed under arrest by the Fayette Co. Deputy Sheriff for Driving Under Intoxication ("DUI") and transported to the West Virginia State Police Turnpike Office in Beckley, West Virginia. While at that office, DENNIS EUGENE WEST agreed to take the ECIR-11 breath test. The result of that test disclosed a blood alcohol level of .128; in excess of the legally allowable limit of .08. A misdemeanor criminal complaint (Case # 22-MIDM-01070) was subsequently commenced against DENNIS EUGENE WEST in the Magistrate Court of Fayette Co., W. Va.[6] That criminal case is pending as of the filing of this Verified Supplemental Complaint.

11. In accord with established governmental protocols, the W. Va. State Police promptly

---

[5]  In compliance with the statutory mandate set forth in W. Va. Code § 7-1-3ff(c), the County Commission of Fayette County, West Virginia created the Fayette Co. Code Enforcement Agency by its enactment of Section **VII** of the **FCoWV Public Nuisance Abatement Ordinance**. In that Ordinance, the Commission vested the Fayette Co. Code Enforcement Agency with appropriate governmental Environmental and Public Health Protection and Public Nuisance Investigation and Abatement authorities and responsibilities that the Commission determined were necessary and proper to the effective discharge of its legal mandate and responsibilities, including portions of the State Sovereign's authorities conveyed to the Commission by **both** W. Va. Code §§ 7-1-3ff and 3kk.

[6] Aside from the undisputed fact that **Remedial Defendant DENNIS EUGENE WEST** was the driver of the tractor trailer at the time of the crash/Hazardous Materials Spill Event, **none** of the factual matters at issue in the pending misdemeanor criminal action against Defendant **DENNIS EUGENE WEST** are at issue in any of the claims of the Governmental Plaintiffs in this civil action or are relevant to any element of any civil claim asserted herein against **Remedial Defendant** DENNIS EUGENE WEST; all of which involve strict liability under applicable law.

notified the Emergency Response Office of the W. Va. Department of Environmental Protection ("WVDEP") of the crash/Hazardous Materials Spill Event. The WVDEP and its Emergency Response Contractor, Clean Harbors, promptly responded to the crash/Hazardous Materials Spill Event site and, continuously during the ensuing several days provided the immediately required Hazardous Materials Spill Response containment and initial site clean-up services (hereinafter: "**Immediate Response Measures**" or "**IRMs**").

12. As a result of this Hazardous Materials Spill Event, the spilled Hazardous Materials were **Released** into the surface soils, subsurface soils, groundwater, surface water sediments and surface waters of the **Subject Watersheds** within which the Hazardous Materials Spill Event occurred. Following this Hazardous Materials Spill Event, the **Released** EMPIGEN® AS/F90:

(i) **produced a continuously visible foam and sheen on at least 11.5 miles of the surface waters of Subject Watersheds** that remained visible after the crash event;

(ii) **produced a strong, pungent "fish like" odor within the adversely impacted areas of the Subject Watershed** that lingered for several days and, which, though decreasing in strength over time, continues to be noticeable in the adversely impacted areas of that Watershed;

(iii) **resulted in, and may be continuing to result in, observable Fish Kills** in the surface waters of the **Subject Watersheds** that is proximate to the crash **Site** for approximately nine (9) miles downstream of the crash site.

13. The following two (2) photographs are a fair and accurate representation of the visible foam on the surface waters of Paint Creek within the **Subject Watersheds** on the day following the Spill Event:





14. The following two (2) photographs are each a fair and accurate representation of dead fish in Paint Creek within the **Subject Watersheds** on the day following the Spill Event:





15. Adverse impacts on publicly-owned groundwater and surface water resources within **the Subject Watersheds** caused or contributed to by the past and on-going **Release(s)** into the **Subject Watersheds** of the Hazardous Material and Solid Waste from this crash/Hazardous Materials Spill Event have resulted, and are continuing to result, in: **(a)** the loss of beneficial uses of these surface water and groundwater resources with the **Subject Watersheds**; and **(b)** the improper and unpermitted disposal of a **Solid Waste** within the State of West Virginia; both conditions constituting a Public Nuisance under the common law of West Virginia and expressly declared to be: **(1)** a "Public Nuisance and a Clear and Present Danger to People" by the General Law of West Virginia set forth in W. Va. Code § 22-15-1(c)(1)[7]; **(2)** a Public Nuisance declared by the Fayette Co. Commission in Section **V** of the FCoWV Public Nuisance Abatement Ordinance[8] that

---

[7] Section **1(c)** of the W. Va. Solid Waste Management Act provides:

> The Legislature further finds that solid waste disposal has inherent risks and negative impact on local communities and specifically finds the following:  **(1) Uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people.**

W. Va. Code § 22-15-1(c) [Bolding emphasis added].

[8] Section **V** of the FCoWV Public Nuisance Abatement Ordinance provides, in relevant part:

> **(a)** Each of the following are hereby defined and declared to be a ***Public Nuisance***, and each day any of the following acts, omissions are committed, or conditions maintained or allowed to exist within Fayette County shall constitute a separate offense:
>
> ***            ***            ***            ***            ***
>
> > **(6)** the ***Disposal*** of any ***Waste***, or ***Hazardous Waste***, which:  **(A)** presents or may present an **Imminent** and **Substantial Endangerment** to the Public Health, Safety, Welfare, or the ***Environment*** within Fayette County, or **(B)** which is detrimental to or impairs any beneficial uses within Fayette County of any ***Waters of the State*** or other ***Natural Resource***;
> >
> > **(7)** the ***Disposal*** of any ***Toxic*** substance within Fayette County other than in complete compliance with the terms and conditions of a permit validly issued by the United States, the State of West Virginia, or Fayette County, non-exclusively including the Fayette County Solid Waste Authority;
> >
> > **(8)** an act or omission done, committed, aided, or assisted to be done or committed, or a condition created, contributed to, or maintained by the use of any property of any

---

is subject to Judicial Abatement pursuant to Section **XXII** of the FCoWV Public Nuisance Abatement Ordinance.

**(b)  The Legal Origin and Nature of the Governmental Plaintiff's Continuing Public Nuisance Abatement Authority Asserted Herein:**

**9**.    Article II, Section 2 of the W. Va. Constitution provides that the powers of government are resident in the Citizens of the State of W. Va. "and can be rightfully exercised only in accordance with their will and appointment."

**10**.    Pursuant to Article III, § 3 of the Constitution of the State of West Virginia, the government of the State of W. Va. is instituted by the Citizens of West Virginia and vested with all of their powers as Sovereigns "for the common benefit, protection and security of the people, nation or community."  Most prominent among those powers inherent in the Sovereignty of those citizens and vested by them in their State government are the "Police Powers" of the State, meaning the inherent power to provide adequate protection of the Public Health, Safety, Welfare and the **Environment** for the benefit of present and future generations of the Public:

> The "police power" of the state is the power of government inherent in every

-------

kind, real or personal, by any *Person* that unreasonably interferes with the reasonable and comfortable use and enjoyments within Fayette County of any public property, *Waters of the State*, or other *Natural Resource* held in trust for the use and benefit of present and future generations of the public by any *Person*;

**(9)** any accumulation of refuse or debris, overgrown vegetation, *Toxic* spillage or **Toxic** seepage located on private lands within Fayette County, which is determined to be unsafe, unsanitary, dangerous or detrimental to the Public Health, Safety or Welfare, whether the result of natural or manmade force or effect;

**(10)** the *Release* or *Disposal* of any . . . . *Waste,* or *Pollutant or Contaminant* at, under, or emanating from any *Facility* which causes, creates, or contributes to any of the following conditions within Fayette County:
  **(1)** distinctly visible floating or settleable solids, suspended solids, scum, foam or oily slicks in the receiving *Waters of the State*;
  **(2)** deposits or sludge banks on the bottom of any receiving *Waters of the State*;
  **(3)** offensive taste or odor in or emanating from any receiving *Waters of the State*;
  **(4)** distinct change in the visible color of any *Waters of the State*;

sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. *Farley v. Graney*, 146 W.Va. 22, pt. 5 syl., 119 S.E.2d 833; *Nulter v. State Road Commission*, pt. 2 syl., 119 W.Va. 312, 193 S.E. 549 (194 S.E. 270); *City of Huntington v. State Water Commission*, 137 W.Va. 786, pt. 3 syl., 73 S.E.2d 833. The police power is difficult to define because it is so extensive, elastic and constantly evolving to meet the new and increasing demands for its exercise for the benefit of society. It embraces the power of the state to preserve and promote the public welfare and it is concerned with whatever affects the peace, security, morals, health and general welfare of the community. **'The exercise of the police power cannot be circumscribed within narrow limits nor can it be confined to precedents resting on conditions of the past. As civilization becomes more complex and advancements are made, the police power of necessity must develop and expand to meet such conditions.'** *Farley v. Graney*, 146 W.Va. 22, 36, 119 S.E.2d 833, 842.

*State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 750 (1965) [bolding added].

**11**. The principles of West Virginia law that form the **remedial arm** of the Sovereign's "Police Powers," provides expansive legal authorities that govern the inherent power of the Sovereign State to **ABATE** anything that impermissibly and unreasonably endangers the Public Health, Safety, Welfare or the **Environment**, or impermissibly and unreasonably impairs the beneficial uses of any **Natural Resource** held in Public Trust for the benefit of present and future generations of the Public, is referred to as the "Public Nuisance Doctrine," and those acts or conditions that present or may present such unreasonable endangerments or impairments to the Public or any substantial number of persons are referred to by the common law and statutes of W. Va. as each being a "Public Nuisance". *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co*., 200 W. Va. 221, 245, 488 S.E.2d 901, 925 (1997) ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated. Thus, until such harm is abated, the public nuisance is continuing, and the statute of limitations does not accrue.").

**12**. Because of its long-standing origin in the inherited common law of England and its continuing primacy among the inherent "Police Powers" of the Sovereign State of West Virginia, it long has been and remains a fundamental principle of the common law of Public Nuisance in

West Virginia that the power to bring and prosecute before the courts a Public Nuisance Abatement action lies in the first instance <u>only</u> with public prosecutors authorized to bring the claims of the Sovereign State, and such other public officials as are authorized by law. *Id.* at p. 241. ("Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public.")

13.    Pursuant to W. Va. Code § 7-1-3, the Governmental Plaintiff herein, the County Commission of Fayette County, W. Va., is vested "under rules prescribed by law" with superintendence of the internal "police" (*i.e.,* public protection) and fiscal affairs of Fayette County, a political subdivision of the State of West Virginia.

14.    Pursuant to W. Va. Code § 7-1-3kk, the County Commission of Fayette Co., has been vested by the General Law of W. Va. with the following "Police Powers" of the State of W. Va.:

> **In addition to all other powers and duties now conferred by law upon county commissions, commissions are hereby authorized to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance.** The ordinances may provide for a misdemeanor penalty for its violation. The ordinances may further be applicable to the county in its entirety or to any portion of the county as considered appropriate by the county commission.

**Id.** [Bolding and underscoring emphasis added].

**(c) Governmental Plaintiff's Prosecutorial Purposes and Goals in this Public Nuisance Abatement Action:**

15.    The Governmental Plaintiff and the **Fayette Co. Health Officer** bring this case to:

**(a)**    obtain judicial abatement at the sole cost of the **Remedial Defendants**, jointly and severally, by requiring them timely to pay the **Abatement Action Costs** incurred and to be incurred by the Governmental Plaintiff, the **Fayette Co. Health Officer**, and the **FCoWV Code Enforcement Agency**, a governmental agency empowered by W. Va.

Code § 7-1-3kk[9] and FCoWV Public Nuisance Abatement Ordinance Section **VIII(b)(1)(C)** to conduct or oversee appropriate investigation of the ***Public Nuisance*** conditions (*i.e.,* "the uncontrolled disposal of solid waste") declared by the W. Va. Legislature in W. Va. Code § 22-15-1(c)(1)[10], which condition is also declared to be ***Public Nuisance*** by Section **V(b)**[11] of the FCoWV Public Nuisance Abatement Ordinance, within and emanating from within the **Subject Watershed** in Fayette County that present or may present an unacceptable endangerment to health or the ***Environment*** within the **Subject Watersheds** arising from the improper and unpermitted disposal of **Solid Waste**; all in a manner consistent with the requirements of the **National Contingency Plan**;

**(b)**    secure timely judicial abatement of the on-going *Per Se* Public Nuisance conditions within the **Subject Watershed** declared Sections **V(a)(7)** and **(10)(1)**, **(2)**, **(3)** and **(4)** the FCoWV Public Nuisance Abatement Ordinance to be a ***Public Nuisance***; all such judicial abatement binding and compelling **Remedial Defendants** GADSDEN, GAILLARD AND WEST LLC and DENNIS EUGENE WEST, jointly and severally, at their sole costs, timely to pay for in full compliance with this Court's Orders and subject to appropriate oversight and supervision by this Court the timely performance of all required ***Abatement Actions*** by the **FCoWV CEA**, all actions necessary to address and abate the continuing ***Public Nuisance*** conditions and endangerments to the public health, safety, welfare and the ***Environment*** caused and contributed to by the past and ongoing acts and omissions for which remedial liability has been imposed by W. Va. Public Nuisance Abatement law and by Section **VI** of the FCoWV Public Nuisance Abatement Ordinance"), all in a manner consistent with the requirements of the **NCP** and Section **IX** of that Ordinance;

---

[9]   The provisions of W. Va. Code 7-1-3kk are quoted in Paragraph 16, *supra*.

[10]   The relevant provisions of W. Va. Code § 22-15-1(c)(1) are quoted in Footnote # 9, *supra*.

[11]   Section **V(b)** of the FCoWV Public Nuisance Abatement Ordinance provides:

The nuisances described and declared in Section **V(a)** of this Ordinance are not intended to be, and shall not be construed as, exclusive, and any act of commission or omission, and any condition which constitutes a nuisance by statute or common law of the State of West Virginia, when committed, omitted or existing within Fayette County, is declared to constitute a Public Nuisance.

(d) secure timely judicial abatement of on-going conditions declared by the General Law of West Virginia [*i.e.,* Section 1(c) of the W. Va. Solid Waste Management Act, W. Va. Code § 22-15-1(c)] to be a "public nuisance and clear and present danger to people"[12] as *Per Se* Public Nuisance conditions pursuant to the common law of W. Va.; all such judicial abatement binding and compelling **Remedial Defendants** GADSDEN, GAILLARD AND WEST LLC and DENNIS EUGENE WEST, jointly and severally, at their sole costs, to pay for, in full compliance with this Court's Orders and with appropriate oversight and supervision by this Court, for **Abatement Action Costs** incurred and to be incurred by the Fayette Co. Code Enforcement Agency in performing all **Abatement Actions** necessary to abate the continuing Public Nuisance conditions pursuant to the remedial liability imposed upon each such **Remedial Defendant** by the General Law of West Virginia;

(e) secure timely judicial abatement of on-going Public Nuisance conditions pursuant to the common law of West Virginia; all such judicial abatement binding and compelling **Defendants**, jointly and severally, at their sole costs, to pay for, in full compliance with this Court's Order and with appropriate oversight by the this Court, the performance by the Fayette Co. Code Enforcement Agency of all actions necessary to abate the continuing Public Nuisance conditions pursuant to the remedial liability imposed upon each such **Remedial Defendant** by the common law of West Virginia;

(f) recover from the **Remedial Defendants**, jointly and severally, the ***Abatement Action Costs*** incurred and to be incurred by Fayette County (and any cooperating governmental authority within West Virginia) in investigating and responding to the ***Public Nuisance*** conditions within and emanating from the **Subject Watershed** for which each such Defendant is, strictly[13] liable, jointly and severally[14], pursuant to Section **VI(a)(1-9)(B)** of the FCoWV Public Nuisance Abatement Ordinance;

(g) recover restitution under the law of Unjust Enrichment for the benefits received by each

---

[12] W. Va. Code § 22-15-1(c)(1).

[13] Sections **VI(a)(1-9)(B)** and **(e)** of the FCoWV Public Nuisance Abatement Ordinance.

[14] Sections **VI(a)(1-9)(B)** and **(f)** of the FCoWV Public Nuisance Abatement Ordinance.

**Remedial Defendant** resulting from the Governmental Plaintiff's incurrence of costs of responding to the harms to, loss of value of, and loss of water at the **Subject Property** that was and is the legal responsibility of each of the **Remedial Defendants**;

(h)  recover from the **Remedial Defendants**, jointly and severally, appropriate prejudgment interest pursuant to applicable law, non-exclusively including Sections **III(b)(6)** and **VI(a)(1-9)(B)&(F)** of the Fayette Co. Public Nuisance Abatement Ordinance;

(i)  recover from the **Insurer Defendant** payment for all Public Nuisance Abatement Action Costs and Response Costs incurred or to be incurred by the Governmental Plaintiff herein that have been lawfully imposed upon the **Remedial Defendants** herein, subject only to the limits of liability set forth in the liability insurance policy it issued to the **Remedial Defendants** that lawfully apply with respect to such costs;

(i)  for such other relief as this Court may deem necessary and proper.

## IV.  JURISDICTION AND VENUE:

16.  This Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because this civil action is between "citizens of different states" and the matters in controversy herein exceeds the sum or value of $75,000, exclusive of interest and costs.

17.  Pursuant to 28 U.S.C. § 1391(b)(2), this Federal Judicial District is the proper venue for this civil action because it is:  **(i)** the Federal Judicial District in which a substantial part of the events or omissions giving rise to the claims herein occurred; and **(ii)** the federal judicial district in which all of the real property adversely impacted by the conditions of Public Nuisance alleged herein that is the subject of the action is situated.

## V.  THE PARTIES:

18.  The Governmental Plaintiff herein, the County Commission of Fayette County, West Virginia, is a public corporation that, pursuant to W. Va. Code § 7-1-1, may sue and be sued, and is a political subdivision of the State of West Virginia.

19. The **Public Health Governmental Plaintiff** herein, Anita Stewart, D.O., is the duly appointed **Fayette Co. Health Officer**[15] and is authorized to bring before this Court this civil action seeking to abate a Public Nuisance condition endangering the Public Health within Fayette County pursuant to W. Va. Code § 16-3-6 (quoted in full in Footnote # 6, *supra*).

20. **Remedial Defendant** GADSDEN, GAILLARD AND WEST LLC was, on the date of Spill Event (*i.e.,* August 24, 2022), a South Carolina Limited Liability Company in Good Standing with the Office of the South Carolina Secretary of State.  Its principal place of business, members, and the name and address of its statutory agent for service of process as then currently reported by it to the South Carolina Secretary of State are set forth on the webpage maintained by the South Carolina Secretary of State; a true and correct copy of which is attached hereto as **EXHIBIT 2**.

21. On August 30, 2022, **Remedial Defendant** DENNIS EUGENE WEST, purportedly acting as "Manager" of **Remedial Defendant** GADSDEN, GAILLARD AND WEST LLC, filed with the Office of the South Carolina Secretary of State "Articles of Termination" of GADSDEN, GAILLARD AND WEST LLC, which "Articles of Termination" states that the date of dissolution of GADSDEN, GAILLARD AND WEST LLC as a South Carolina Limited Liability Co. was August 25, 2022, the day following the occurrence of the Spill Event at issue herein.  A true and correct copy of this "Article of Termination," certified by the Office of the South Carolina Secretary of State, is attached as **EXHIBIT 3** to the Complaint.

22. **Remedial Defendant** DENNIS EUGENE WEST, an individual and resident of the South

---

[15]  W. Va. Code § 16-2-13(a) provides:

> A local health officer serves as the executive officer of the local board [of Health] and under its supervision, a local health officer shall administer and enforce state rules, local rules, and local health department rules within the local board of health's service area.

Further, W. Va. Code § 16-2-13(c) provides:  "A local health officer shall perform enforcement activity."

Carolina, was at the time of the Spill Event herein at issue an officer and member of **Remedial Defendant** GADSDEN, GAILLARD AND WEST LLC and was the operator the tractor trailer owned by **Remedial Defendant** GADSDEN, GAILLARD AND WEST LLC involved in the August 24, 2022 crash/Hazardous Materials Spill Event at issue herein.

23.  **Insurer Defendant** INTEGON NATIONAL INSURANCE COMPANY, a North Carolina Corporation and a member company of the National General Insurance Group, which, in turn, is a member of the Allstate Insurance Group, has acknowledged that it is the Insurer legally responsible for providing the liability insurance benefits and coverage pursuant to the **Designated Liability Insurance Policy** issued to **Remedial Defendants** GADSDEN, GAILLARD, AND WEST LLC and DENNIS EUGENE WEST.  A copy of the January 19, 2023 "Reservations of Rights" letter sent to **Remedial Defendant** GADSDEN, GAILLARD, AND WEST LLC (c/o DENNIS EUGENE WEST) by National General Insurance Co. acting on behalf of Integon National Insurance Company that acknowledges Integon National Insurance Co. as the Insurer legally responsible for providing the liability insurance benefits and coverage pursuant to the **Designated Liability Insurance Policy** is attached hereto as **EXHIBIT 4** and incorporated herein.

24.  **Notwithstanding any other provision of this Verified Supplemental Complaint, the liability asserted against the Insurer Defendant set forth in this Verified Supplemental Complaint is, the claims of the Governmental Plaintiff, is subject to the provisions of Section VI(j) of the FCoWV Public Nuisance Abatement Ordinance, and is limited to the available proceeds of the insurance coverage afforded by those insurance policies providing liability insurance coverage to either or both Remedial Defendants** GADSDEN, GAILLARD, AND WEST LLC **or** DENNIS EUGENE WEST **on account of the liability imposed upon either or both such Defendants by operation of law for all "property damage" or "covered pollution cost or expense" arising out of covered occurrences during the policy period.**

## VI. __DEFINITIONS__:

   25.   Words used in this Complaint are intended to be taken and understood in their natural and ordinary sense unless this Complaint clearly indicates that a different meaning was intended.  Unless otherwise provided herein, terms used in this Complaint that are defined in the FCoWV Public Nuisance Abatement Ordinance (indicated herein by both bolding and italics emphasis) shall have the meaning assigned to them in those Rules or in that Ordinance.  Whenever terms listed below are used in this Complaint, the following definitions shall apply:

   **a.**   The term "**Abatement Action**" shall have the same meaning assigned to it in Section **III(a)** of the FCoWV Public Nuisance Abatement Ordinance;

   **b.**   The term "**Abatement Action Costs**" shall have the same meaning assigned to it in Section **III(b)** of the FCoWV Public Nuisance Abatement Ordinance;

   **c.**   The term "**Discharge**" means the accidental or intentional spilling, leaking, pumping, pouring, emitting, emptying, or dumping of a **Hazardous Waste**, **Solid Waste**, **Waste** or **Pollutant or Contaminant** into or on any land or water;

   **d.**   The term "**Disposal**" means the **Discharge**, deposit, injection, dumping, spilling, leaking, or placing of any **Hazardous Waste**, **Waste** or **Pollutant and Contaminant** into or on any land or water so that such **Hazardous Waste**, **Waste** or **Pollutant or Contaminant** or any constituent thereof, may enter the **Environment** or be emitted into the air or discharged into any waters, including ground waters;

   **e.**   The term "**Environment**" means any surface water, surface water sediments, groundwater, soil water, drinking water supply, soil, land surface, subsurface strata, or ambient air within Fayette or Kanawha Counties, West Virginia;

   **f.**   the term "**Facility**" means:  **(A)** any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft; or **(B)** any site or area where Hazardous Waste, Pollutants or Contaminants, or Waste has been deposited, stored, disposed of, or placed, or otherwise

come to be located;

**g.**  the terms "**Feasibility Study**" and "**FS**" shall each mean a study undertaken by, under order of, or under the oversight and supervision of, either or both the FCoWV SWA or the FCoWV CEA to develop and evaluate options for an Abatement Action or Remedial Action, or both.  The **FS** emphasizes data analysis and is generally performed concurrently and in an interactive fashion with the Remedial Investigation, using data gathered during the **RI**.  The **RI** data are used to define the objectives of the Abatement Action, Response Action, or both, to develop Abatement Action or Remedial Action alternatives, and to undertake a screening and detailed analysis of the alternatives.  Each term also refers to a report that describes the results of the study.

**i.**  The term "**Hazardous Waste**" means a **Solid Waste**, or combination of **Solid Wastes**, which because of its quantity, concentration, physical, chemical, or infectious characteristics may-

    **(A)**  cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

    **(B)**  pose a substantial present or potential hazard to human health or the **Environment** when improperly treated, stored, transported, or disposed of, or otherwise managed;

**j.**  The term "**Institutional Controls**" means non-engineered instruments, such as legislative, administrative, or judicial legal controls, that help to minimize the potential for human or adverse ecological exposure to contamination or protect the integrity and effectiveness of an **Abatement Action** by limiting land or resource use.  Examples of Institutional Controls include easements and restrictive covenants, zoning restrictions, special building permit requirements, and well drilling restrictions or prohibitions;

**k.**  The term "**Insurer Defendant**" means **INTEGON NATIONAL INSURANCE COMPANY** (hereinafter:  "Integon"), solely to the extent of proceeds legally available pursuant to Small Fleet Advantage Risk Retention Group, Inc. liability insurance policy number FCA00000100931-00, for the liability insurance coverage provided pursuant to which policy it is legally responsible, providing liability insurance coverage to Gadsden, Gaillard, and West LLC and Dennis Eugene West for each of their liability to the

Governmental Plaintiff for all Public Liability and Covered Pollution Costs or Expenses alleged herein that either shall be obligated to pay by reason of liability imposed upon it by law for property damages and for all Public Liability and Covered Pollution Costs or Expenses alleged herein caused by or arising out of each covered occurrence during the policy period of the foregoing liability insurance policy;

l.  the term "**Leachate**" means any liquid that has come into contact with, passed through or emerged from **Solid Waste** and contains soluble, suspended, or miscible materials removed from such waste;

m.  the terms "**National Contingency Plan**" and "**NCP**" each means the National Oil and Hazardous Substances Pollution Contingency Plan formally promulgated by the U.S. Environmental Protection Agency and codified at 40 C.F.R., Part 300, pursuant to rulemaking authority conveyed to it in Section 105 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA" or "federal Superfund Act"), 42 U.S.C. § 9605, as the same may be amended or repromulgated from time to time.

n.  Consistent with its definition in Section **III(aa)** of the FCoWV Public Nuisance Abatement Ordinance, the term "**Natural Resources**" means land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources within Fayette County belonging to, managed by, held in trust by, appertaining to, or otherwise controlled or protected by the State of West Virginia or Fayette County, or subject, in whole or in part, to its jurisdiction, excepting only:  (1) such natural resources within Fayette County regarding which the Governor of West Virginia, acting pursuant to his lawful authority under CERCLA § 107(f)(2)(B), 42 U.S.C. § 9607(f)(2)(B) or the Constitution and statutes of the State of West Virginia, is acting on behalf of the public as a trustee, or has appointed anyone, other than the Fayette County Commission, or any Officer, Board, Agency or Authority of Fayette County, exclusively to act on behalf of the public regarding the assessment and collection of natural resource damages under CERCLA or the laws of the State of West Virginia regarding such natural resources; and (2) such natural resources within Fayette County regarding which the General Law of West Virginia vests exclusive authority to act on behalf of the public regarding the assessment and collection of damages

for loss of or injury to such natural resources in a *Person* or Governmental Entity other than the Fayette County Commission, or any Officer, Board, Agency or Authority of Fayette County, and evidence a legislative intent that such exclusive authority can or should be exercised outside the context of the Public Trust Doctrine.

**o.**  The term "**Open Dump**" means:

    **(1)**  consistent with its definition in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-2.84, promulgated by WVDEP pursuant to its authority under W. Va. Code § 22-15-5, which Rule is a component of the West Virginia Solid Waste Management Plan approved by USEPA pursuant to RCRA § 4007, 42 U.S.C.§ 6947, any Solid Waste Disposal without a permit under W. Va. Code §22-15-1 *et seq.*, and is not otherwise authorized by an order of the Secretary; or violates state law; or where Solid Waste is disposed in a manner that does not protect the environment;

    **(2)**  consistent with the following provisions of the West Virginia Solid Waste Management Rule, which Rule is a component of the W. Va. Solid Waste Management Plan approved by USEPA pursuant to RCRA § 4007, 42 U.S.C.§ 6947, any site or location at which **Solid Waste** is disposed of which is declared to be an **Open Dump** by the following provisions of the W. Va. Solid Waste Management Rule:  **(i)** §§ 33-1-1.6 [*i.e.,* **Solid Waste** disposed of at other than a permitted site or which violates requirements of W. Va. C.S.R.§ 33-1-1.6(b)]; **(ii)** 33-1-7.2.a.1 (*i.e.,* **Solid Waste** disposal location at which measure have not been taken to "prevent" the discharge of pollutants from the accumulated waste into the **Waters of the State**); § 33-1-7.2.a (**Solid Waste** disposed of at other than a permitted site); and 33 1-7.2.a.5 (**Solid Waste** disposal location at which measure have not been taken to limit public access to the accumulated waste;

**p. (1)**  the term "**Owner or Operator**" means:

    **(A)**  in the case of a **Facility**, any **Person** owning or operating such **Facility** . . .

            ***        ***        ***        ***        ***

Such term does not include a Person, who, without participating in the management of a Facility, holds indicia of ownership primarily to protect his security interest in the

**Facility**.

**(2)** In the case of a Public Nuisance resulting in whole or in part from **Disposal** or a **Release** of a **Hazardous Waste**, **Pollutant or Contaminant**, or **Waste** accepted for transportation by a common or contract carrier . . . , the term "owner or operator" shall mean:

    **(A)** such common carrier or other *bona fide* for hire carrier acting as an independent contractor during such transportation; and

    **(B)** notwithstanding any other provision of this Ordinance, the shipper of such **Hazardous Waste**, **Pollutant or Contaminant**, or **Waste** shall not be considered to have caused or contributed to any Public Nuisance resulting solely from a **Release** during such transportation which resulted solely from circumstances or conditions beyond his control.

**q.** the term "**Pollutant or Contaminant**" shall include, but not be limited to, any element, substance, compound, or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the Environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring; except that the term "pollutant or contaminant" shall not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs **(A)** through **(F)**, inclusive, of Paragraph (14) [of CERCLA § 101(14)] and shall not include natural gas, liquefied natural gas, or synthetic gas of pipeline quality (or mixtures of natural gas and such synthetic gas);

**r.** The term "**RCRA**" shall mean the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as further amended, 42 U.S.C. §§ 6901 - 6991m, as the same may be amended or re-enacted from time to time.

**s.** the term "**Release**" means any spilling, leaking, pumping, pouring, emitting, emptying, Discharging, injecting, escaping, leaching, dumping, or disposing into the **Environment**

(including the abandonment or discarding of barrels, containers, and other closed receptacles containing any **Hazardous Waste**, **Solid Waste** or **Pollutant or Contaminant**);

t.    The terms "**relates to**" and "**related to**" each means in any way, directly or indirectly, evidencing, demonstrating, describing, explaining, supporting, mentioning, discussing, commenting on, constituting, concerning, comprising, containing, reflecting upon, identifying, stating, depicting, illustrating, recording, or referring to the given subject.

u.    The term "**Remedial Defendants**" means Defendants GADSDEN, GAILLARD, AND WEST LLC and DENNIS EUGENE WEST**;**

v.    Consistent with its definition in the **NCP**, 40 C.F.R. § 300.5, the terms "**Remedial Investigation**" or "**RI**" each means the process undertaken by, under order of, or under the oversight and supervision of the FCoWV Code Enforcement Agency or a court of competent jurisdiction to determine the nature and extent of the problem(s) presented by a **Release**. The **RI** emphasizes data collection and site characterization and is generally performed concurrently and in an interactive fashion with the **Feasibility Study**. The **RI** includes sampling and monitoring, as necessary, and includes the gathering of sufficient information to determine the necessity for *Remedial Action* or **Abatement Action** and properly and fully to support the evaluation of remedial alternatives.

w.    the terms "**Respond**" or "**Response**," when used in this Complaint in connection with any act, action, or activity of the Governmental Plaintiff or the Fayette Co. Health Officer, shall have the same meaning as provided in CERCLA § 104(25), 42 U.S.C. § 9601(25), as that definition has been interpreted and construed by the decisions of the courts of the United States having jurisdiction to interpret CERCLA, and shall also specifically include any **Abatement Action**, and all enforcement activities related thereto undertaken by either of the Governmental Plaintiffs or the Fayette Co. Health Officer;

x.    The term "**Site**" means: (1) all geographical areas, sites, facilities and locations, both above ground and underground, that are within the **Subject Watershed** where the Public Health, Safety, Welfare or the **Environment** are or maybe adversely impacted by any condition of *Public Nuisance* resulting, in whole or in part, from **Released Hazardous Wastes**, **Solid Waste**, or **Pollutants and Contaminants** emanating at or from the

Hazardous Materials Spill Event at issue herein; and (2) any downgradient or adjacent area within Fayette or Kanawha Counties where the Public Health, Safety, Welfare or the Environment are or may be adversely impacted by any condition of Public Nuisance existing at, within or emanating from the **Subject Watersheds**.

**y.**   the terms "**Solid Waste**" or "**Waste**" shall have the meaning ascribed to either of those terms by the definitions in RCRA § 1004(27), 42 U.S.C. § 6903(27), Section 2(31) of the WV Solid Waste Management Act, W. Va. Code § 22-15-2(31), or Section **III(ww)** of the FCoWV Public Nuisance Abatement Ordinance, which definitions include, subject to the exclusions specified: "any garbage, refuse, and other discarded material including solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining, agricultural operations, or from community activities;"

**z.**   The term "**Subject Property**" means any real property within the **Subject Watersheds** that is or may adversely impacted by **Released Hazardous Wastes**, **Solid Waste**, *Wastes*, or **Pollutants and Contaminants** emanating at or from the Hazardous Materials Spill Event at issue herein;

**aa.**  The term "**Subject Watersheds**" means any real property within the Skitter Creek Watershed or Paint Creek Watershed in Fayette or Kanawha Counties, West Virginia where the EMPGEN® AS-F90 that was **Released** as a result of the crash/Hazardous Materials Spill Event at issue herein has or hereafter comes to be located, or that is or may be adversely impacted by that **Released** EMPGEN® AS-F90 or any resulting **Leachate**;

**bb.**  The term "**Waste Materials**" means:  **(1)** any **Hazardous Waste**; **(2)** any **Pollutant or Contaminant**; or (3) any **Solid Waste**;

**cc.**  Consistent with the definition of "Waters" in the WV Water Pollution Control Act, W. Va. Code § 22-11-3(23) and in the WV Water Resources Protection and Management Act, W. Va. Code § 22-26-2(18), the term "**Waters of the State**" means:  any and all water on or beneath the surface of the ground, whether percolating, standing, diffused or flowing, wholly or partially within this state, or bordering this state and within its jurisdiction, and includes, without limiting the generality of the foregoing, natural or artificial lakes, rivers, streams, creeks, branches, brooks, ponds (except farm ponds, industrial settling basins and ponds and water treatment facilities), impounding reservoirs, springs, wells, watercourses

and wetlands;

## VII.  ALLEGATIONS COMMON TO ALL COUNTS:

26.  **Remedial Defendant** GADSDEN, GAILLARD AND WEST LLC is, and was at all relevant times on and after August 24, 2022, the **Owner** and **Operator** of the tractor trailer truck involved in the crash/Hazardous Materials Spill Event at issue herein.

27.  The tractor trailer involved in the crash/Hazardous Materials Spill Event was, until it was removed from the **Site** of the crash/**Subject Property** on and after August 25, 2022, a **Facility**.

28.  Once spilled, the EMPGEN® AS-F90 that was **Released** within the **Subject Watersheds** as a result of the crash/Hazardous Materials Spill Event at issue herein is a **Solid Waste** within the meaning of RCRA § 1004(27), 42 U.S.C. § 6903(27), Section 2(31) of the WV Solid Waste Management Act (hereinafter:  "WVSWMA"), W. Va. Code § 22-15-2(31), and Section 2.119 of the West Virginia Solid Waste Management Rule (hereinafter:  "WVSWMR"), W. Va. C.S.R. § 33 1-2.119, and is also "**Waste**" within the meaning of Section **III(ww)** of the **FCoWV Public Nuisance Abatement Ordinance** because it is material that has been discarded, whether accidentally or intentionally, including solid, liquid, semisolid, or contained gaseous material resulting from commercial, operations, and from community activities, which material is not otherwise excluded:  **(a)** from the definition of the term **Solid Waste** by any operative provision of applicable federal or W. VA. Solid Waste Management statutes; or **(b)** from the definition of the term **Waste** by the **FCoWV Public Nuisance Abatement Ordinance**.

29.  The EMPGEN® AS-F90 that was **Released** within the **Subject Watersheds** as a result of the crash/Hazardous Materials Spill Event at issue herein is a "**Pollutant or Contaminant**" within the meaning of CERCLA § 101(33), 42 U.S.C. § 9601(33), and Section **III(ee)** of the FCoWV Public Nuisance Abatement Ordinance because it is a **Solid Waste** and chemical wastes

discharged into any water, including groundwater, and because it is a substance, which after release into the **Environment** and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the **Environment** or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death or physiological malfunctions or physical deformations, in such organisms or their offspring, and which is not otherwise excluded by any operative provision of federal, West Virginia law or Fayette County Ordinance.

**30.** The EMPGEN® AS-F90 that was **Released** within the **Subject Watershed** as a result of the crash/Hazardous Materials Spill Event at issue herein is a "**Hazardous Waste**" within the meaning of RCRA § 1004(5), 42 U.S.C. § 6903(5), Section 3(6) of the WV Hazardous Waste Management Act, W. Va. Code § 22-18-3(6), and Section **III(u)** of the **FCoWV Public Nuisance Ordinance** because it is a **Solid Waste**, or combination of **Solid Wastes**, which, because of its quantity, concentration, or physical, chemical, or infectious characteristics may pose a substantial present or potential hazard to human health or the **Environment** when improperly treated, stored, transported, or disposed of, or otherwise managed.

**31.** Any real property or place where the EMPIGEN® AS-F90 **Released** into the **Environment** as a result of the crash/Hazardous Materials Spill Event at issue herein has come to be located within the **Subject Watersheds** is a **Facility**.

**32.** Because: **(1) Remedial Defendant** GADSDEN, GAILLARD, AND WEST LLC is now a dissolved and defunct South Carolina Limited Liability Co.; **(2)** all Defendants are out-of-state residents with no significant contacts with the State of West Virginia or Fayette or Kanawha Counties; and **(3) Remedial Defendant** DENNIS EUGENE WEST has no educational background relevant to, and no expertise or prior work experience relevant to, the proper conduct or supervision of an environmental **Remedial Investigation** or **Feasibility Study** that complies

with the requirements of the **National Contingency Plan**, the Governmental Plaintiff and the **FCoWV CEA**, acting pursuant to their authority under Section **VIII(b)(1)(C)** of the **FCoWV Public Nuisance Abatement Ordinance**, have determined the no Party Responsible for the Spill Event and the resulting and continuing endangerments to the Public Health and the **Environment** can competently perform or oversee the performance of the environmental investigation and monitoring activities that are required properly to respond to, investigate and abate the continuing *Public Nuisance* conditions within the **Subject Watersheds** at issue herein.  The Governmental Plaintiff recommends to this Court that all Site Investigation and Abatement Actions with respect to the **Subject Watersheds** determined to be appropriate by this Court be performed by authorized agents of the **Governmental Plaintiff** at the sole cost of the **Remedial Defendants**.

## VIII.   CAUSES OF ACTION:

### COUNT ONE:

### JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCE DECLARED BY THE GENERAL LAW OF WEST VIRGINIA
(*Governmental Plaintiff against each Remedial Defendant*)

**33.**  The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint as if fully repeated herein.

**a.   The Public Nuisance Doctrine under West Virginia Law:  *Per Se* Public Nuisances:**

**40.**  The W. Va. Supreme Court of Appeals has recognized that inherent in the "police powers" of a sovereign state at common law is the power to declare by legislative action those acts, omissions and conditions that present unacceptable risks to the public health, safety, welfare or the **Environment** to be a Public Nuisance, and to prohibit and require abatement of the same.  *State ex rel. Dyer* v. *Sims*, 134 W Va. 278 (1950).

**41.**   The U.S. Supreme Court has recognized the fundamental and essential nature of the

"police powers" of a state to afford adequate protection of the Public Health, Safety and Welfare:

> **Although the police power of a state cannot be arbitrarily exercised, it is to be remembered that it is one of the most essential powers of government, <u>one that is the least limitable</u>.** It may, indeed, seem harsh in its exercise, and usually is harsh on some individual. **But the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily.**

*Hadacheck* v. *Sebastian,* 239 U.S. 394, Syllabus # 1 (1915) (Emphasis added).

42.   Under West Virginia law, when an act, omission or condition is declared to be a danger to the Public Health, Safety, Welfare or the **Environment** (*i.e.,* a Public Nuisance) by a duly enacted provision of a General Law of the State or by a provision of local legislation (*i.e.,* a duly adopted county or municipal ordinance) authorized by a General Law of the State, unless a court of competent jurisdiction determines that such legislation was enacted arbitrarily (*i.e.,* the legislative provision at issue is "not reasonably related to legitimate governmental goal or objective") or is in violation of an express constitutional provision, it is the responsibility of the court to:  **(a)** determine if the act, omission or condition at issue is, in fact, governed by the language of the duly enacted legislation before it; and, **(b)** if the act, omission or condition is within the ambit of what has been declared to be a Public Nuisance by such duly enacted legislation, to order the appropriate abatement of the Public Nuisance so as fully to effect the remedial purposes of such "police power" legislation.  *Sharron Steel Corp.* v *City of Fairmont*, 175 W. Va. 479 at 488-489 (1985); *State* v. *Wender*, 149 W. Va. 413 (1965), *overruled on other grounds*; *Hartsock-Flesher Candy Co.* v. *Wheeling Wholesale Grocery Co.*, 174 W. Va. 538 (1984).

**b.   The Very Existence of an Open Dump within West Virginia Is Prohibited by the General Law of West Virginia and Each Such Open Dump Is Expressly Declared by a Duly Enacted General Law of West Virginia to be a "Public Nuisance and a Clear and Present Danger to People":**

43.   WVSWMA § 10(a), W. Va. Code § 22-15-10(a), provides, in relevant part:

**(a) Open dumps are prohibited and <u>it is unlawful for any person to create, contribute to, or operate an open dump</u> or for any landowner to allow an open dump to exist on the landowner's property** unless that open dump is under a compliance schedule approved by the director. The compliance schedule shall contain an enforceable sequence of actions leading to compliance and shall not exceed two years. . . .

**Id**. (Bolding and underlining emphasis added).

44.   By enactment of W. Va. Code § 22-15-1(c)(1), a part of the WVSWMA, the State of West Virginia joined with the United States[16] in emphatically condemning and prohibiting all existing **Open Dumps** and other "improper" Solid Waste Disposal, whether intentional or accidental:

**(c)** The Legislature further finds that solid waste disposal has inherent risks and negative impact on local communities and specifically finds the following: **(1) Uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people**; . . .

W. Va. Code § 22-15-1(c) [Bolding emphasis added].

45.   Because creating, contributing to, operating, or allowing the existence of an **Open Dumps** on real property in West Virginia on or after the effective date of W. Va. Code § 22-15-10(a) is expressly prohibited by those prospective, regulatory provisions of the General Law of West Virginia, any currently existing **Open Dump** (not subject to a "compliance schedule with the WVDEP Cabinet Secretary) within West Virginia on or after the effective date of W. Va. Code § 22-15-10 necessarily constitutes an instance of the "inadequately controlled and improper" (*i.e.,* expressly illegal) **Disposal** of **Solid Waste** within the meaning of W. Va. Code § 22-15-1(c)(1).   Accordingly, **each and every Open Dump now existing within West**

---

[16]   *See:*  Congressional Statement of National Policy in **RCRA** §§ 1003(a)(3), 42 U.S.C. § 6902(a)(3), the federal national ban on "Open Dumping" facilities and practices in RCRA § 4005(a), 42 U.S.C. § 6945(a). and the federal "minimum requirements for States participating in the federal Solid Waste Management program, RCRA §§ 4003(a)(3) and 4004, 42 U.S.C. §§ 6943(a)(3) & 6944.

Virginia is <u>always and everywhere a Public Nuisance</u> and an instance of a "clear and present danger to people," unless such Open Dump is under a compliance schedule approved pursuant to the WVSWMA and its implementing Legislative Rules set forth in the WVSWMR, W. Va. C.S.R., Chapter 33, Series 1.

**46.** To assure that W. Va. law complies with the "minimum requirements" for a federally-approvable State Solid Waste Plan set forth in **RCRA** § 4003(a)(3)[17], which expressly requires that state law for participating states provide for the "upgrading of all existing open dumps [*i.e.,* not just those created or operating on after the effective date of W. Va. Code 22-15-10]," the W. Va. Legislature, exercising its patent authority under the Public Nuisance Doctrine inherent in the sovereignty of the State of West Virginia, declared in W. Va. § 22-15-1(c) that each existing instance in West Virginia of the "**Uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people.**" By so doing, the W. Va. Legislature expressly invoked the full remedial power of the Public Nuisance Doctrine in W. Va. law to secure appropriate abatement of "all existing open dumps" within W. Va. from all those **Persons** (*i.e.,* all persons who created, caused, contributed to or maintained the public nuisance condition) who bear the retrospective, purely remedial liability that is and has always been the hallmark of the Public Nuisance Doctrine

---

[17] **RCRA** § 4003(a), 42 U.S.C. § 6943(a), provides, in relevant part:

> **(a) Minimum requirements.** In order to be approved under section 6947, each State plan must comply with the following **minimum requirements**—
>
> \* \* \*          \* \* \*          \* \* \*          \* \* \*          \* \* \*
>
> **(3) The plan shall provide for the closing or upgrading of all existing open dumps within the State pursuant to the requirements of section 6945**.
> **(4)** The plan shall provide for the establishment of such State regulatory powers as may be necessary to implement the plan.

under Anglo-American law.[18]

**47.** The **Discharge** and **Disposal** of **Solid Waste** (*i.e.,* the spilled EMPIGEN® AS-F90)[19] by Defendants as a result of the crash/Hazardous Materials Spill Event was at the time of the crash/Hazardous Materials Spill Event an instance of the "uncontrolled, inadequately controlled and improper disposal of a **Solid Waste** within West Virginia as that phrase is used in W. Va. Code § 22-15-1(c) because the spilled EMPIGEN® AS-F90 was at the time of **Disposal** and remain now "discarded material, including solid, liquid, semisolid . . . material resulting from industrial, [or] commercial . . . . operations, or from community activities."

**48.** The **Discharge** and **Disposal** of **Solid Waste** (*i.e.,* the spilled EMPIGEN® AS-F90) by Defendants as a result of the crash/Hazardous Materials Spill Event was at the time of the crash/Hazardous Materials Spill Event also an instance of the illegal and, therefore, "improper," **Disposal** of a **Solid Waste** in W. Va. in violation of the prohibition set forth in WVSWMA Section 10(a), W. Va. Code § 22-15-10(a) because the acts of **Discarding** those **Solid Wastes** into the **Environment** created at every place within the **Subject Watersheds** where that discarded **Solid Waste** has come to be located a prohibited "Open Dump."[20]  This is irrefutable because that **Disposal**, whether accidental or intentional, of **Solid Waste** was not then, and has never been, "in

---

[18]  *But See:  Co. Commission of Fayette Co., WV* v. *National Grid NE Holdings 2, LLC*, Case No. 2:21-cv-00307 (S.D. WV) (Johnston, C.J.) (9-21-22 Order Granting in Part and Denying in Part Defendant National Grid's Partial Motion to Dismiss) (holding that the provisions of WVSWMA § 1(c), W. Va. Code § 22-15-1(c), is unenforceable as *Per Se* Legislative Declaration of Public Nuisance because it is "an unenacted statutory preamble.").

[19]  *See:* ¶ 25, *supra.*

[20]  WVSWMA § **2(23)** defines the term "**Open Dump**" as follows:

> "Open dump" means any solid waste disposal which does not have a permit under this article, <u>or</u> is in violation of state law, <u>or</u> where solid waste is disposed in a manner that does not protect the environment.

W. Va. Code § 22-15-2(23) [underlining emphasis added].

compliance with a permit issued pursuant to W.Va. Code Chapter 22, Article 15, as is unconditionally required by WVSWMR Section 1.6[21].

49.   Moreover, because there are no "protective measures" in place, as required by Section 7.2 of the WVSWMR[22], to prevent the **Solid Waste Released** as a result of the Spill Event and **Leachate** resulting from that **Solid Waste** from entering into **Waters of the State** (including groundwater), every place within the **Subject Watersheds** where the **Solid Waste Released** as a result of the crash/Hazardous Materials Spill Event has come to be located is an instance of **Solid Waste Disposal** "in a manner that does not protect the environment," within the meaning of that phrase as it is used in the definition of the term "Open Dump" in W. Va. Code § 22-15-2(23). Accordingly, each such location within the **Subject Watersheds** is, therefore, an **Open Dump**, as defined by W. Va. Code § 22-15-2(23), the very creation and existence of which is expressly prohibited by W. Va. Code § 22-15-10(a).

50.   In addition, each place within the **Subject Watersheds** where the **Solid Waste Released** as a result of the crash/Hazardous Materials Spill Event at issue herein now or hereafter comes to be located is not now, and never has been, a "permitted" **Solid Waste Facility** in West Virginia, as that term in used in the WVSWMA and in the WVSWMR.

51.   Section 1.6 of the WVSWMR, W. Va. C.S.R. § 33-1-1.6, provides, in relevant part:

---

[21]   W. Va. C.S.R. § 33-1-1.6, quoted in full at ¶ 51, *infra*.

[22]   WVSWMR § 7.2 provides:

> **7.2. Protection of the Environment and the Public**.
>
> **7.2.a. Any site at which the following protective measures have not been instituted will be classified as an open dump:**
> **7.2.a.1. Measures must be taken to prevent the discharge of pollutants from the accumulated waste into the waters of the State (*e.g.*, measures to prevent runoff into surface water bodies or the infiltration of leachates into local aquifers);**

W. Va. C.S.R. § 33-1-7.2 [Bolding emphasis added.]

**1.6.  Lawful Disposal of Solid Waste Required**. -- Solid waste must be disposed, processed, stored, transferred, or recycled **only** at permitted solid waste facilities as described in this rule, and in compliance with W. Va. Code §22C-4-10 [now codified at W. Va. Code § 22-15-10].

**1.6.a.** The discharge, deposit, injection, dumping, **spilling**, **leaking**, burning, burying, or otherwise placing of any solid waste or **leachate** into or on any land or water so that such solid waste or any constituent thereof may enter the environment or be emitted into the air, or discharged into any waters, including groundwaters, is prohibited unless specifically authorized by a permit or permits from the Department.

**1.6.b. Solid waste facilities or activities failing to satisfy this subsection are considered open dumps**, as defined in section 2, and will be subject to the actions and penalties outlined in W. Va. Code §22-15-15.

52.   For each of the foregoing reasons, each such place on the surface, within the subsurface soils, within the groundwater, within the surface water sediments, and within the surface waters of the **Subject Watersheds** where the **Solid Waste Released** as a result of the Spill Event has come to be located is a "Public Nuisance and clear and present danger to people" as declared by W. Va. Code § 22-15-1(c)(1).

53.   It has long been and remains black letter Anglo-American common law that any Person that causes, creates, participates in causing or creating, actively contributes to, or maintains a Public Nuisance is strictly liable for its proper abatement. Restatement (2nd) of Torts, § 834[23] James A. Sevinsky, *A Common-Law Remedy Among the Statutes*, 5 ABA Natural Resource & Environment Journal, Edition 1 (Summer 1990).

54.   The Restatement (Second) of Torts repeatedly has been cited by the W. Va. Supreme Court of Appeals as articulative of the common law of West Virginia on Nuisance law matters.[24]

---

[23] The Restatement (Second) of Torts, § 834 provides: "One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on."

[24] *Hedricks* v. *Stalnaker*, 181 W. Va. 31 (1989); *Duff* v. *Morgantown Energy Ass'n.*, 187 W. Va. 712 (1992).

The Restatement (Second) of Torts § 821B[25] defines a "public nuisance" as "an unreasonable interference with a right common to the general public."

55.  Under West Virginia common law, each **Remedial Defendant** is strictly liable to the Governmental Plaintiff, jointly and severally, for the conduct of the proper **Remedial Investigation** and **Feasibility Study**, and appropriate abatement of the *Per Se* Public Nuisances that it/he created, contributed to, and which it/he has to date failed or refused to abate, to wit, the **Open Dumps** of **Released Solid Waste** within the **Subject Watershed** (*i.e.,* each place within the **Subject Watershed** where the **Solid Waste Released** as a result of the crash/Hazardous Materials Spill Event at issue herein now or hereafter come to be located).

### COUNT TWO:

### JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE ENDANGERING PUBLIC HEALTH PURSUANT TO W. VA. CODE § 16-3-6

(*Governmental Plaintiff & Fayette Co. Health Officer against each Remedial Defendant*)

56.  The **Governmental Plaintiff** and the **Fayette Co. Health Officer** incorporate in this Count each of the foregoing paragraphs of this Complaint as if fully set forth herein.

57.  As previously alleged in Paragraphs **1(c)** and **24** of this Verified Supplemental

---

[25] The Restatement (Second) of Torts § 821B provides, in relevant part:

> **(1)** A public nuisance is an unreasonable interference with a right common to the general public.
> **(2)** Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>> **(a)** Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>> **(b) whether the conduct is proscribed by a statute, ordinance or administrative regulation**, or
>> **(c)** whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Id. [Bolding emphasis added].

Complaint, W. Va. Code § 16-3-6[26] expressly empowers:  **(a)** either or both the County Health Officer or the County Commission to bring before this Court a complaint seeking abatement of any Public Nuisance condition affecting Public Health; and **(b)** this Court "to restrain, prohibit or abate such nuisance condition."

**58.**  Following the Spill Event, based upon the data contained in the Material Safety Data Sheet prepared by the chemical manufacturer of the EMPIGEN® AS-F90 and other reliable chemical and medical data, the Fayette County Health Officer determined that ingestion, inhalation, dermal exposure or unprotected exposure of the eyes or sinuses to the **Released** Hazardous Material EMPIGEN® AS-F90 presents a danger to health.

**59.**  In late August 2022, the Fayette Co. Health Department and the Kanawha Co. Health Department jointly sampled private water wells within the **Subject Watersheds**.  Although the results that sampling did not detect that any EMPIGEN® AS-F90 or any of its chemical breakdown products had yet migrated into those private wells, because the full nature and extent of the toxic contamination remaining in the subsurface soils, groundwater, surface water, and surface water sediment within the **Subject Watersheds** and resulting endangerments to health, if any, that may be presented by such toxic contamination had not been fully investigated and characterized, and because of the potential continuing migration of the remaining toxic contaminants through the subsurface soils and groundwater, both the Fayette and Kanawha Co. Health Departments recommended that the private water wells within the **Subject Watersheds** not be used for drinking water or dermal contact purposes.

**60.**  Based upon all the currently available data regarding the Spill Event and the resulting and continuing impacts on the **Environment** of the **Released** toxic contamination within the

---

[26]  Quoted in Footnote # 6, *supra.*

Subject Watersheds, the Fayette Co. Health Officer has determined that the provision of adequate protection of health within those watersheds requires the timely and competent completion of a **Remedial Investigation** and **Feasibility Study ("RI/FS")** of the full nature and extent of the **Released Hazardous Material** and resulting endangerments to health or the **Environment**, if any, conducted in compliance with the requirements of the **National Contingency Plan**.

61.    Where a condition "is shown by facts and circumstances to constitute a nuisance affecting public health, the WV Supreme Court of Appeals has held: **"no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law."** *Board of Com'rs of Ohio County v. Elm Grove Mining Co.*, 122 W.Va. 442, 9 S.E.2d 813, 817 (W.Va. 1940) (quoting 1 Wood on Nuisances, 3d Ed., §19); *Respublica v. Caldwell*, 1 U.S. 150 (1785) [bolding emphasis added].

62.    For all the foregoing reasons and because of the determinations of the **Governmental Plaintiffs** set forth in Paragraph 32 of this Verified Supplemental Complaint that the Defendants cannot competently undertake or oversee the required environmental investigations and studies, the Fayette Co. Health Officer and the Governmental Plaintiff have determined that adequate protection of the Public Health, Safety and Welfare require a **NCP**-compliant **Remedial Investigation and Feasibility Study ("RI/FS")** to competently determine: **(1)** the nature and extent of the **Released Hazardous Waste** and **Solid Waste** remaining within the *Environment* with the **Subject Watersheds**; and **(2)** the full nature and extent of endangerments, if any, to Health or the Environment that are or may be presented by the **Released Hazardous Waste** and **Solid Waste**.    Accordingly, the Governmental Plaintiff and the Fayette Co. Health Officer recommend to this Court that, pursuant to W. Va. Code § 16-3-6, it should authorize the Governmental Plaintiff forthwith to commence and complete a **Remedial Investigation** and

Feasibility Study (**"RI/FS"**) of the full nature and extent of the **Released Hazardous Material** and resulting endangerments to health or the **Environment**, if any, within the **Subject Watersheds** conducted in compliance with the requirements of the **National Contingency Plan** at the sole costs of the **Remedial Defendants**, jointly and severally.

## COUNT THREE:

**JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCE DECLARED BY SECTION V OF FAYETTE CO. ORDINANCE NO. 2018-001 PURSUANT TO SECTION XXII OF THAT ORDINANCE, RECOVERY OF PUBLIC NUISANCE ABATEMENT ACTION COSTS INCURRED AND TO BE INCURRED PURSUANT TO SECTIONS VI AND XXII OF THAT ORDINANCE, AND RELATED DECLARATORY RELIEF**

(***Governmental Plaintiff Against Each Remedial Defendants***)

**63.**   The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint as if fully set forth herein.

**64.**   In exercise of the "plenary"[27] authority to enact ordinances conveyed to it by W. Va. Code § 7-1-3ff(b)[28] **and** the very broad ordinance and order making authority conveyed to it by W. Va. Code § 7-1-3kk[29], the Governmental Plaintiff herein, the County Commission of Fayette Co., on August 17, 2018, following several duly noticed Public Hearing regarding that proposed ordinance, enacted the FCoWV Public Nuisance Abatement Ordinance as Fayette Co. Ordinance

---

[27]   The Merriam Webster Dictionary defines the term "plenary" to mean:  "**complete in every respect: absolute, unqualified**."  See:  https://www.merriam-webster.com/dictionary/plenary

[28]   W. Va. Code 7-1-3ff(b) provides:

> **(b)** Plenary power and authority are hereby conferred upon every county commission to adopt ordinances regulating the removal and clean up of any accumulation of refuse or debris, overgrown vegetation or toxic spillage or toxic seepage located on private lands which is determined to be unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare, whether the result of natural or manmade force or effect.

[29]   Quoted in full in ¶ 16, *supra*.

No. 2018-001.   As it pertains to the present, continuing Public Nuisance conditions and endangerments to the ***Environment*** alleged herein, the Fayette Co. Public Nuisance Abatement Ordinance, particularly Section **IX(b)** thereof, seeks to implement Environmental and Public Health Protection investigatory and remedial measures which, to the greatest degree possible, are not inconsistent with the procedures and requirements of the National Oil and Hazardous Substance Pollution Contingency Plan, 40 C.F.R., Part 300[30], the national standard and "road map"[31] for the appropriate course of investigation and abatement of environmental harms and risks to human health arising from the **Release** of Hazardous Substances or **Pollutants or Contaminants**.

65. ***FCoWV Authority to Seek Appropriate Injunctive Relief and Cost Recovery***:  FCoWV Public Nuisance Abatement Ordinance Section **XXII** ["Judicial Abatement of Public Nuisance, Recovery of **Abatement Action Costs**"] provides, in relevant part:

> (a) **Authority of Fayette County Prosecuting Attorney:**  With: respect to an actual or imminently threatened **Public Nuisance,** or with respect to any act or condition which: is detrimental to any beneficial uses within Fayette County of any **Natural Resource**

---

[30] Codified at 40 C.F.R., Part 300, the **NCP** was originally promulgated in 1968 and greatly expanded in 1972 by the Administrator of the U.S. Environmental Protection Agency pursuant to the Spill Response provisions of Section 311 of the federal Clean Water Act, 33 U.S.C. § 1321.  In the 1980's and 1990's, pursuant to the mandate in **CERCLA** § 105(a), 42 U.S.C. § 9605(a), the **NCP** was substantially amended and re-promulgated comprehensively to address the **Responses** (*i.e.,* the precise scope and nature of the necessary and proper course of investigation and clean-up actions) appropriate to **Releases** and threatened **Releases** into the **Environment** of **Hazardous Substances** or **Pollutants or Contaminants** that are the central focus of **CERCLA**.

[31] The Federal Courts have repeatedly described the **NCP** as the "federal roadmap" to be followed in the course of conducting appropriate site remedial investigation and site clean-up actions with respect to **Released Hazardous Substances** and **Pollutants and Contaminants**. *See:  Town of Halfmoon* v. *GE*, 105 F. Supp. 3d 202 (N.D. NY 2015); *New York* v. *Adamowicz*, 16 F. Supp. 3d 123 E.D. NY 2014), *aff'd* with same comment in *New York v. Adamowicz, 609 Fed. Appx. 19* (2nd Cir. NY 2015); *MPM Silicones, LLC* v. *Union Carbide Corp.*, 931 F. Supp. 2d 387 (N.D. NY 2013); *Raytheon Constructors, Inc.* v. *ASARCO Inc.*, 2000 U.S. Dist. LEXIS 6069, 2000 WL 1635482 (D. CO 2000), reversed in part on other grounds, *Raytheon Constructors* v. *Asarco Inc.*, 368 F.3d 1214 (10th Cir. CO 2003).

owned by the State of West Virginia or Fayette County or held in trust by either for the benefit of present and future generations of the public, the Fayette County Prosecuting Attorney may, in addition to or in lieu of any other remedy available to Fayette County, bring a civil action in the name of the Fayette County Commission in any court of competent jurisdiction, and may seek in any such: action any or all of the following forms of relief, and upon presentation to the court of the proof required by law on the required elements of it claims under applicable law, non-exclusively including this Ordinance, the court shall award the Fayette County Commission:

(1) an injunction in the form of a judicial public nuisance abatement order, requiring the liable patty timely and competently to abate the Public Nuisance consistent with the applicable requirements of this Ordinance at their sole cost, under the supervision and oversight of the Fayette County Code Enforcement Agency;

     \*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*

(3) recovery of all **Abatement Action Costs** incurred by Fayette County with respect to such **Public Nuisance**;

     \*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*

(6) where appropriate, a declaratory judgment on liability for further *Abatement Action Costs* to be incurred by the County with respect to the *Public Nuisance* in accord with the provisions of Section **VI(g)** of this Ordinance; and

(7) recovery of such compensatory damages, specifically including *Natural Resource* damages pursuant to Section **VI(a)(l-9)(E)**, as may be available to Fayette County by law with respect to such *Public Nuisance*;

66. ***Certain Equitable Criteria Not Applicable to FCoWV Ordinance Authorized Statutory Injunctions***:  Similar to federal caselaw respecting equitable requirements applicable to injunctions expressly authorized by statute,[32] Section **XXII(b)** of the FCoWV Public Nuisance Abatement Ordinance provides:

In any civil action brought pursuant to this Section **XXII** by the Fayette County Prosecuting Attorney in the name of the Fayette County Commission in which a temporary restraining order, preliminary injunction, or partial or complete mandatory or prohibitory permanent injunction, or judicial *Public Nuisance* Abatement Order is sought, it shall not be necessary for the County Commission to allege or prove at any

---

[32] *EDF, Inc.* v *Lamphier*, 714 F.2d 331 (4th Cir, VA 1983) (Where statute authorizes injunctive relief, there is no need to show Irreparable Harm, health protection balances equities); *Minnesota* v. *Sunbelt Communs. & Mktg.*, 2002 U.S. Dist. LEXIS 26920 (D. MN 2002); *United States* v. *Production Plated Plastics Inc*., 762 F.Supp. 722 (W.D. MI 1991); *United States* v. *Power Engineering Co.*, 10 F. Supp. 2d 1145 (D. CO 1998).

stage of the proceeding that irreparable damage will occur should the temporary restraining order, preliminary injunction, or permanent injunction (including any judicial **Public Nuisance** Abatement Order) not be issued; or that any remedy at law is inadequate, and the temporary restraining order, preliminary injunction, or permanent injunction (including any **Public Nuisance Abatement Action Order**) shall issue as otherwise provided by law without any requirement for such allegations and without such proof.

Id. [bolding emphasis added].

67. ***FCoWV Authority for Recovery of Its Litigation Costs, Including Its Attorneys' and Expert Witness Fees and Costs***:  Section **XXII(c)** of the FCoWV Public Nuisance Abatement Ordinance provides:

> **Recovery of County attorney's fees and litigation costs**:  At every significant stage of any civil action brought pursuant to this Section XXII in which the Fayette County Commission is a prevailing party or substantially prevailing party on any of its claims for interim or final relief, the Fayette County Commission shall be awarded its litigation costs, including attorneys' fees and expenses, expert witness fees and expenses, and the fees and expenses of no more than one (1) non-testifying technical or scientific expert to assist the Fayette County Prosecuting Attorney in the preparation and prosecution of the action, to the extent that judgment for such fees and costs as **Abatement Action Costs** incurred or to be incurred by Fayette County, non-exclusively including the Fayette County Environmental and Public Health Protection Special Settlement Fund, has not already been awarded to Fayette County.

68.  In Section **V** of the FCoWV Public Nuisance Ordinance, the Co. Commission of Fayette County exercised its authority under W. Va. Code § 7-1-3kk to declare by Ordinance the acts, omissions and occurrences that are a ***Public Nuisance*** within Fayette County.  In Section **VI** of the Ordinance, the Co. Commission of Fayette County carefully defined the nature and extent of the ***Public Nuisance*** Abatement liability imposed by the FCoWV Public Nuisance Ordinance.

69. ***Standard of Liability under the FCoWV Public Nuisance Abatement Ordinance***: Section **VI(e)** of the FCoWV Public Nuisance Abatement Ordinance provides:  "Unless otherwise expressly indicated, the standard of civil liability imposed by this Ordinance is strict liability, without regard to any element of *mens rea,* fault, negligence, knowledge, or other wrongdoing."

**70.** ***Scope of Liability under the FCoWV Public Nuisance Abatement Ordinance:***
Section **VI(f)** of the FCoWV Public Nuisance Abatement Ordinance provides:

> **Scope of civil liability**:  When two or more ***Persons*** liable for a ***Public Nuisance***
> declared pursuant to this Ordinance or any other ordinance of Fayette County, which
> Public Nuisance presents or imminently threatens to present a single, indivisible harm
> to the Public Health, Safety, Welfare, or the ***Environment***, or to any beneficial use
> within Fayette County of any ***Natural Resource***, for which there is no reasonable and
> reliable basis for apportioning among those liable or potentially liable ***Persons*** the harm
> presented or imminently threatened by the ***Public Nuisance***, each such Person shall be
> jointly and severally liable for appropriate abatement of the Public Nuisance,
> reimbursement to the County of all ***Abatement Action Costs*** incurred and to be incurred
> by Fayette County with respect to such ***Public Nuisance***, and for all nuisance and
> natural resource damages to which the County may be entitled by law.  Any potentially
> liable party seeking to apportion such harm must prove by a preponderance of the
> evidence that:
>> **(1)** the component of the harm which is sought to be apportioned is scientifically
>> and technologically susceptible to reasonable and reliable apportionment;
>> **(2)** that there is a reasonable and practicable basis for apportioning the harm; and
>> **(3)** that the separate abatement activity proposed for that harm or portion of the
>> harm is at least as practicable, safe, efficient, reliable and cost-effective in
>> providing the degree of protection of the Public Health, Safety, Welfare, and
>> the ***Environment*** as the abatement activity or activities, if any, proposed by the
>> County.

**71.** The past **Releases** of **Hazardous Wastes**, **Solid Wastes**, and **Pollutants or
Contaminants** from the **Site** of the crash/Hazardous Materials Spill Event at issue herein into the
soils, groundwater and surface waters within the **Subject Watersheds** and the continuing
migration of the **Released Wastes** within the ***Environment*** of the **Subject Watersheds** has caused
or contributed to, and is continuing to cause and contribute to, a condition in the groundwater and
connected surface waters within the **Subject Watersheds** that:  **(i)** impairs the quality and
beneficial uses of ***Natural Resources*** held in public trust for the use and benefit of present and
future generations of the Public; and **(ii)** has been declared in Sections **V(a)(6)**, **(8)**, **(10)** and **(17)**
of the FCoWV Public Nuisance Abatement Ordinance to be a ***Public Nuisance*** in Fayette Co.

**72.**  Adverse impacts on the quality of the groundwater and surface water resources within

the **Subject Watersheds** caused or contributed to by the **Hazardous Wastes**, **Solid Wastes**, and

**Pollutants or Contaminants Released** as a result of the crash/Hazardous Materials Spill Event at

issue herein within into the groundwater environment of the **Subject Watersheds** have resulted,

and are continuing to result, in the loss of beneficial uses of these surface water and groundwater

resources, specifically including the ability to use those water resources as a public drinking water

supply or safe recreational water locations without incurring excessive treatment costs; a condition

constituting a ***Public Nuisance*** under the common law of W. Va. and declared to be a ***Public***

***Nuisance*** within Fayette Co. by Section **V(a)(5)** of the FCoWV Public Nuisance Abatement

Ordinance.

    a.    **Abatement of a *Public Nuisance* Declared in Section V(b) of FCoWV Public Nuisance Abatement Ordinance – The Open Dumps (*i.e.,* all places within the Subject Watershed where the Released Solid Waste has or hereafter comes to be located) within the Subject Watershed Are a *Per Se* Public Nuisance Pursuant to the West Virginia Solid Waste Management Act, W. Va. Code §§ 22-15-1(c)(1), and Are, Therefore, Each a *Public Nuisance* Pursuant to Section V(b) of that Ordinance:**

*(Asserted by Governmental Plaintiff against each Remedial Defendant)*

   73.  Section **V(b)** of the FCoWV Public Nuisance Ordinance provides:

     **(b)** The nuisances described and declared in Section **V(a)** of this Ordinance are not intended to be, and shall not be construed as, exclusive, **and any act of commission or omission, <u>and any condition which constitutes a nuisance by statute or common law of the State of West Virginia, when committed, omitted or existing within Fayette County, is declared to constitute a *Public Nuisance*</u>.**

**Id.** [Bolding and underlining emphasis added].

   74.  Because all of the places within the **Subject Watersheds** where the **Solid Waste**

**Released** as a result of the crash/Hazardous Materials Spill Event has or hereafter comes to be

located are a prohibited **Open Dump** within the meaning of the W. Va. Solid Waste Management

Act, W. Va. Code, Chapter 22, Article 15, and, therefore, a Public Nuisance declared by W. Va.

Code § 22-15-1(c)(1), each such place within the **Subject Watersheds** is also a ***Public Nuisance*** declared by Section **V(b)** of the FCoWV Public Nuisance Abatement Ordinance.

   **75.**   Because each **Remedial Defendant** herein is a ***Person*** that created the ***Public Nuisances*** declared in Section **V(b)** and described in the preceding paragraph of this Complaint as a result of the crash/Hazardous Materials Spill Event at issue herein, each is jointly and severally liable for the remedial relief imposed by the Ordinance required properly to abate that ***Public Nuisance*** pursuant to Sections **VI(a)(1)(A) and (B)**[33] of the Ordinance.   Consequently, each **Remedial Defendant** is jointly and severally liable to the **Governmental Plaintiff** pursuant to Sections **V(b)** and **VI(a)(1)(A), (B)** of the **FCoWV Public Nuisance Ordinance** for:  **(i)** all ***Abatement Action***

---

[33]   Sections **VI(a)(1)** through **(9)** of the FCoWV Public Nuisance Abatement Ordinance define the ***Persons*** that are liable for the ***Public Nuisances*** declared in Section **V** of the Ordinance.   Sections **VI(a)(1-9)(A)** through **(F)** define the nature and extent of the remedial liability imposed by the Ordinance.   Of particular import to this case, Section **VI(a)(1)(A)** and **(B)** provide:

> **(a) Civil Liability for Abatement of a Public Nuisance; Recovery of Abatement Action Costs:**   Notwithstanding any other provision of county or municipal law within Fayette County, and subject only to the affirmative defenses set forth in subsection **(b)** of this Section **VI**, --
>
>> **(1)** Any **Person** that creates, has caused or created, or threatens imminently to cause or create a ***Public Nuisance*** [as defined in Section V of the Ordinance] within Fayette County;
>>
>>      ***        ***        ***        ***        ***
>
> is liable for:
>
>> **(A)** timely and effective performance at their cost of all **Abatement Actions** required by this Ordinance appropriately to address, or respond to, or abate the **Public Nuisance** within Fayette County that is, or may be, presented in whole or in part, directly or indirectly, by their act or omission;
>>
>> **(B)** timely reimbursement to Fayette County of all **Abatement Action Costs** incurred or to be incurred by the County with respect to such Public Nuisance, non-exclusively including all **Abatement Action Costs** incurred by Fayette County to unde1take, or to cause or compel any **Responsible Party** or **Potentially Responsible Party** to undertake, any **Abatement Action** in compliance with the requirements of this Ordinance, regardless of whether those costs are incurred prior to, during or following enactment of this Ordinance;

required properly to abate that **Public Nuisance** in compliance with that Ordinance; and **(ii)** timely reimbursement of all **Abatement Action Costs** incurred and to be incurred to secure proper abatement of that **Public Nuisance** in compliance with that Ordinance.

**76.**   Each **Remedial Defendant** was, at the time of the crash/Hazardous Materials Spill Event, an **Owner or Operator** of the **Facility** (*i.e.,* the tractor trailer involved in the crash) at, from or on which a **Public Nuisance** was created, and, each **Remedial Defendant**, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the **Public Nuisance**.  Because **Public Nuisance** conditions resulting from the **Hazardous Wastes**, **Solid Wastes**, and **Pollutants or Contaminants Released** as a result of the crash/Hazardous Materials Spill Event at issue herein continue to exist within Fayette and Kanawha Counties as of the date of this Complaint, each **Remedial Defendant** is jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(b)** and **VI(a)(4)(A) and (B)** of the FCoWV Public Nuisance Abatement Ordinance for:  **(i)** all **Abatement Action** required properly to abate that **Public Nuisance** in compliance with that Ordinance; and **(ii)** timely reimbursement of all **Abatement Action Costs** incurred and to be incurred by Fayette Co. to secure proper abatement of that **Public Nuisance** in compliance with the Ordinance.

**b.**   **Abatement of a *Public Nuisance* Declared in Section V(a)(6) of the FCoWV Public Nuisance Abatement Ordinance – Disposal of any Waste, or Hazardous Waste, Which Is Detrimental to or Impairs Any Beneficial Uses within Fayette County of any Waters of the State or other Natural Resource:**

**(*Governmental Plaintiff against each Remedial Defendant*)**

**77.**   The EMPIGEN® AS-F90 that has been **Released** into the **Environment** within the **Subject Watersheds** and that is continuing to migrate through the soils and groundwater within those Watersheds, as a result of the crash/Hazardous Materials Spill Event at issue herein is a "**Hazardous Waste**" and a "**Waste**" as each of those term is defined in Section **III** of the FCoWV

Public Nuisance Abatement Ordinance.

78.  Those **Released Hazardous Wastes** and **Wastes** have entered into surface waters of the **Subject Watersheds**, all **Waters of the State**, and there have impaired, and continue to impair, the beneficial uses of those surface waters:  **(a)** by rendering them inimical to aquatic life and causing fish kills within those waters; **(b)** by impairing the ability of those waters to support safe, recreational uses due to endangerments presented by dermal contact with those waters; and **(c)** by rendering those waters unfit for use as drinking water without the need to incur excessive investigation and treatment costs.

79.  Each **Remedial Defendant** is a *Person* that caused, created, or contributed to the Public Nuisance condition declared in Section **V(a)(6)** of the FCoWV Public Nuisance Abatement Ordinance, within the meaning of Section **VI(a)(1)** of that Ordinance.

80.  Each **Remedial Defendant** is a *Person* that, at any time during the creation or existence of the Public Nuisance declared in Section **V(a)(6)** of the FCoWV Public Nuisance Abatement Ordinance, was an **Owner or Operator** of a **Facility** at, on, in, from, or with which a *Public Nuisance* has been created or, contributed to within Fayette Co., and, who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the Public Nuisance, within the meaning of Section **VI(a)(4)** of that Ordinance.

81.  Each **Remedial Defendant** is a *Person* (including any past or present generator, past or present transporter, or past or present **Owner or Operator** of a **Facility**) that has contributed the past or present *Disposal* in Fayette Co. of any *Waste*, *Hazardous Waste*, or *Pollutant or Contaminant* which presents, or which may present, the *Public Nuisance* declared in Section **V(a)(6)** of the FCoWV Public Nuisance Abatement Ordinance within Fayette County, within the meaning of Section **VI(a)(8)** of that Ordinance.

82.  Defendants **GG&WLLC** and **Dennis Eugene West** are each a **Person** that through its/his acts or omissions causing the crash/Hazardous Materials Spill Event at issue herein:  **(a)** presented a *Public Nuisance* declared in Section **V(a)(6)** of the FCoWV Public Nuisance Abatement Ordinance; and **(b)** created conditions which are detrimental to or impaired any beneficial uses within Fayette Co. of *Waters of the State* or of any *Natural Resource*, within the meaning of Section **VI(a)(9)** of the FCoWV Public Nuisance Abatement Ordinance.

83.  Consequently, each **Remedial Defendant** is jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(6)** and **VI(a)(1)**, **(4)**, **(8)** and **(9)** of the FCoWV Public Nuisance Abatement Ordinance for:  **(i)** all **Abatement Action** required properly to abate that Public Nuisance in compliance with that Ordinance; and **(ii)** timely reimbursement of all **Abatement Action Costs** incurred and to be incurred to secure proper abatement of that Public Nuisance in compliance with that Ordinance.

c.  **Abatement of a *Public Nuisance* Declared in Section V(a)(10), Subparagraphs (1) and (3) of the FCoWV Public Nuisance Abatement Ordinance – Release or Disposal of any Hazardous Waste, Waste, or Pollutant or Contaminant at or Emanating from Any *Facility* which Causes, or Contributes to the Presence in any *Waters of the State* within Fayette Co. of:  (a) Distinctly Visible Floating or Settleable Solids, Suspended Solids, Scum, Foam or Oily Slicks in the Receiving Waters of the State; or (b) Offensive Taste or Odor in or Emanating from any Receiving Waters of the State:**

*(Governmental Plaintiff against each Remedial Defendant)*

84.  Section **V(a)(10)**, **Subparagraphs (1)** and **(3)** of the FCoWV Public Nuisance Abatement Ordinance provides, in relevant part:

(a)  Each of the following are hereby defined and declared to be a *Public Nuisance*, and each day any of the following acts, omissions are committed, or conditions maintained or allowed to exist within Fayette County shall constitute a separate offense:

***          ***          ***          ***          ***

**(10)** the *Release* or *Disposal* of any *Hazardous Waste*, *Waste*, or *Pollutant or Contaminant* at, under, or emanating from any *Facility* which causes, creates, or contributes to any of the following conditions within Fayette County:

**(1)** distinctly visible floating or settleable solids, suspended solids, scum, foam or oily slicks in the receiving Waters of the State; or

\*\*\*          \*\*\*          \*\*\*          \*\*\*          \*\*\*

**(3)** offensive taste or odor in or emanating from any receiving *Waters of the State*;

85.    The EMPIGEN® AS/F90 that has been **Released** into the *Environment* within the **Subject Watersheds**, that that is continuing to migrate through the soils and groundwater within those Watersheds, as a result of the crash/Hazardous Materials Spill Event at issue herein are a "**Hazardous Waste**" and a "**Waste**" as each of those term is defined in Section **III** of the FCoWV Public Nuisance Abatement Ordinance.

86.    The EMPIGEN® AS-F90 that has been **Released** into the *Environment* within the **Subject Watersheds** as a result of the crash/Hazardous Materials Spill Event at issue herein entered into the surface waters of Paint Creek within the **Subject Watersheds** in Fayette and Kanawha Counties and there caused a visible foam to form on the surface of a portion of those waters for several miles downgradient of the Spill site, which foam persisted for more than twenty-four (24) hours after first entering those waters, and which has reappeared in those surface waters months after the Spill Event following significant rain events.

87.    The EMPIGEN® AS/F90 that has been **Released** into the *Environment* within the **Subject Watersheds** as a result of the crash/Hazardous Materials Spill Event at issue herein entered into the surface waters of Paint Creek within the **Subject Watersheds** in Fayette and Kanawha Counties and there caused a strong, pungent, "fish-like" offensive odor to emanate from those receiving waters, which strong odors, though declining in intensity, persisted for several days after the Spill Event.

88.    Each **Remedial Defendant** is a *Person* that, at any time during the creation or existence of the *Public Nuisance* declared in Section **V(a)(10)**, **Subparagraphs (1)** and **(3)** of the FCoWV Public Nuisance Abatement Ordinance, was *an **Owner or Operator*** of a *Facility* at, on, or from which a *Public Nuisance* has been created within Fayette Co., and, who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the *Public Nuisance*, within the meaning of Section **VI(a)(4)** of that Ordinance.

89.    Each **Remedial Defendant** is a *Person* (including any past or present generator, past or present transporter, or past or present *Owner or Operator* of a *Facility*) that has contributed the past or present *Disposal* in Fayette County of any *Waste*, *Hazardous Waste*, or *Pollutant or Contaminant* which presents, or which may present, the *Public Nuisance* declared in Section **V(a)(10)**, **Subparagraphs (1)** and **(3)** of the Ordinance within Fayette County, within the meaning of Section **VI(a)(8)** of the FCoWV Public Nuisance Abatement Ordinance.

90.    Each **Remedial Defendant** is a *Person* that through its/his acts or omissions causing the crash/Hazardous Materials Spill Event at issue herein:  **(a)** presented a *Public Nuisance* declared in Section **V(a)(10)**, **Subparagraphs (1)** and **(3)** of the FCoWV Public Nuisance Abatement Ordinance; and **(b)** which is detrimental to or impaired any beneficial uses within Fayette County of *Waters of the State* or of any *Natural Resource*, within the meaning of Section **VI(a)(9)** of the FCoWV Public Nuisance Abatement Ordinance.

91.    Because each **Remedial Defendant** is *Person* that first created and contributed to the *Public Nuisance* declared by Section **V(a)(10), Subparagraph (1)** and **(3)** by its acts and omissions in connection with the crash/Hazardous Materials Spill Event within the **Subject Watershed** at issue herein, each **Remedial Defendant** is jointly and severally liable for the remedial relief imposed by the Ordinance required properly to abate that *Public Nuisance* declared

in that Ordinance.  Consequently, each **Remedial Defendant** is jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(10)**, **Subparagraph (1)** and **(3)** and **VI(a)(4), (8) & (9)** of the FCoWV Public Nuisance Abatement Ordinance for:  **(i)** all ***Abatement Action*** required properly to abate that ***Public Nuisance*** in compliance with that Ordinance; and **(ii)** timely reimbursement of all ***Abatement Action Costs*** incurred and to be incurred to secure proper abatement of that ***Public Nuisance*** in compliance with the Ordinance.

92.    The Governmental Plaintiff has incurred and is continuing to incur **Abatement Action Costs**, within the meaning of Section **III(b)** the FCoWV Public Nuisance Abatement Ordinance, in responding to the ***Public Nuisance*** conditions in the **Subject Watersheds**.

<u>**COUNT FIVE:**</u>
**JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE
PURSUANT TO THE COMMON LAW OF WEST VIRGINIA**
(*Governmental Plaintiff against each Remedial Defendant*)

93.    The **Governmental Plaintiffs** incorporate and reallege the foregoing paragraphs as if fully set forth herein.

94.    Under West Virginia common law, a Public Nuisance is "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 595-96 (1945).

95.    The Restatement (Second) of Torts § 821B[34], which the West Virginia Supreme Court of Appeals in *Hedricks* v. *Stalnaker*, 181 W. Va. 31 (1989) cited as articulative of the common law of West Virginia, defines a public nuisance as "an unreasonable interference with a right common to the general public."

---

[34] Quoted in fn. 28, *supra*.

96.    Where a condition "is shown by facts and circumstances to constitute a nuisance affecting public health 'no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law.'" *Board of Com'rs of Ohio County v. Elm Grove Mining Co.*, 122 W.Va. 442, 9 S.E.2d 813, 817 (W.Va. 1940) (quoting 1 Wood on Nuisances, 3d Ed.,§19); *Respublica v. Caldwell*, 1 U.S. 150 (1785).

97.    Under the common law of West Virginia as declared by W. Va. Code § 2-1-1, Public Nuisance Abatement is an exercise of the sovereign's inherent power to secure on behalf of the Public abatement of a harm or of an unacceptable endangerment (*i.e.,* a risk of harm) to the public health, safety, welfare, and the **Environment**.

98.    The W. Va. Supreme Court of Appeals has described Public Nuisance generally under the common law of West Virginia as "the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public[.] (footnotes omitted)".  *State, ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 (1997) at fn. 28.

99.    The appropriate use, enjoyment and existence of **Natural Resources** within West Virginia and Fayette County uncontaminated by than acts or omission other than those expressly permitted or consented to by the Sovereign pursuant to the General Laws of West Virginia are rights common to present and future generations of the Public.

100.    In articulating the common law of West Virginia, the W. Va. Supreme Court of Appeals has stated:  "A public nuisance action usually seeks to have some harm which affects the public health and safety abated.  Thus, until such harm is abated, the public nuisance is continuing and the statute of limitations does not accrue." *State, ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 (1997).  Accordingly, the provision of adequate protection of

the Public Health, Safety, Welfare and of the **Environment** through appropriate abatement of the Public Nuisance condition is the fundamental purpose of a Public Nuisance Abatement action under the common law of West Virginia.

**101.**    Pursuant to W.Va. Code § 7-1-3kk, the General Law of West Virginia has vested in the Governmental Plaintiff herein, The County Commission of Fayette County, the legal authority "to abate or cause to be abated anything which the commission determines to be a public nuisance." Having declared in Section **V(b)** of the Fayette Co. Public Nuisance Abatement Ordinance that any condition existing within Fayette County that constitutes a Public Nuisance under the common law of West Virginia is also a declared *Public Nuisance* pursuant to that Fayette Co. Ordinance , the Governmental Plaintiff has the authority to pursue an action for Judicial Abatement of a Public Nuisance under to secure timely and adequate abatement of unacceptable harms and hazards to the Public Health, Safety, Welfare or the **Environment** presented by this condition of Public Nuisance at issue herein.

**102.**    The aforementioned acts and omissions of the **Remedial Defendants** in connection with the crash/Hazardous Materials Spill Event at issue herein caused or contributed to the continuing Public Nuisance conditions within the **Subject Watersheds**, which were since the time of their initial creation and which remain to the present offensive to the senses, such that an ordinary person would reasonably be annoyed or disturbed, and which constituted an unreasonable interference with the free use and enjoyment of such groundwaters and connected surface waters within the **Subject Watersheds**, all of which are "**Waters of the State**" held in trust for the benefit of present and future generations of the Public.

**103.**    Under the common law of W, Va. as articulated by the W. Va. Supreme Court of Appeals in *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 488 S.E.2d 901

(1997), the object of the Public Nuisance Abatement action is to abate the harms or unacceptable endangerments to the Public Health, Safety, and **Environment**, not just the act(s) or omission(s) triggering any such harm or endangerment.  Accordingly, a civil action for Public Nuisance Abatement stands unaffected by any Statute of Limitations until the harm or unacceptable endangerments to the Public Health, Safety, and **Environment** are appropriately abated.

104.    The seriousness of the harm and of the unacceptable endangerments to the Public Health, Safety, and **Environment** caused by such noxious and offensive Public Nuisance conditions within the **Subject Watersheds** alleged herein substantially outweigh non-existent social utility of the conduct of each of the **Remedial Defendants** that precipitated the crash/Hazardous Materials Spill Event at issue herein.  Each **Remedial Defendant** have caused to the on-going noxious or offensive conditions by their actions and failures to act on connection with that crash/Hazardous Materials Spill Event that have cause or contributed to, and are continuing to cause or contribute to the on-going impairment of **Natural Resources**, including groundwater, surface waters and sediments, within the **Subject Watersheds** that are held in trust for the benefit of present and future generations of the Public.

105.    The elected representatives of the People of the State of West Virginia and of the People of Fayette County did not consent to or expressly permit or authorize the conduct of the **Remedial Defendants** alleged herein to have caused or contributed to, or to be causing and contributing to, the continuing conditions of Public Nuisance within the **Subject Watersheds** alleged herein.

106.    The aforementioned conduct of each of the Defendants in the operation of its **Facility** (*i.e.,* the tractor trailer involved in the crash/Hazardous Materials Spill Event) is and was a substantial factor in causing and contributing to the condition of a continuing Public Nuisance in the **Subject Watersheds** alleged herein.

107.   Each **Remedial Defendant** is jointly and severally liable under the common law of West Virginia for abatement of the Public Nuisance conditions in **Subject Watershed** alleged herein because each is:  **(i)** a **Person** who, by their acts and omissions as an **Owner and Operator** of its/his **Facility** within the **Subject Watersheds** caused, created, and contributed to the continuing condition of Public Nuisance alleged herein; and **(ii)** a "**Person**" who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the Public Nuisance.

**COUNT SIX:**

**DECLARATORY AND INJUNCTIVE RELIEF PROVIDING FOR RECOVERY OF:  (i) COUNTY COSTS INCURRED WITH RESPECT TO PUBLIC NUISANCE RESPONSE ACTIONS REGARDING THE SUBJECT WATERSHEDS; AND (ii) RECOVERY OF THE COUNTY'S REASONABLE ATTORNEYS' FEES AND COURT COSTS INCURRED HEREIN; ALL PURSUANT TO W. VA. CODE § 7-1-3ff(h)(4)**

(*Governmental Plaintiff against each Remedial Defendant*)

108.   The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint as if fully set forth herein.

109.   As quoted and discussed in Count Two, paragraph 81 of this Complaint, W. Va. Code § 7-1-3ff(b) provided to W. Va. County Commissions "[p]lenary[35] . . . authority . . . to adopt ordinances regulating the removal and clean-up of any accumulation of refuse or debris, overgrown vegetation or toxic spillage or toxic seepage located on private lands which is determined to be unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare, whether the result of natural or manmade force or effect."

110.   Subsection (h) of that same statute, W. Va. Code § 7-1-3ff(h), provides in relevant part:

---

[35] Webster's Dictionary defines the term "plenary" as: "**full; entire; complete; absolute**; as, a plenary license; plenary authority." (Bolding emphasis added).

**(h)** A civil proceeding may be brought in circuit court by the county commission against the owner or owners of the private land **or other responsible party** that the subject matter of the order of the county commission to subject the private land in question:

***     ***     ***     ***     ***

**(3)** to order and decree that the contractor may enter upon the private land in question at any and all times necessary to make ordered repairs, alterations, or improvements, or ordered demolition, removal, or clean up; and **(4)** to order the payment of all costs incurred by the county with respect to the property and for reasonable attorney fees and court costs incurred in the prosecution of the action.

Id**.** [Bolding emphasis added.]

111.    In contrast with the previous subsections of W. Va. Code § 7-1-3ff, all of which address requirements applicable to administrative proceedings before the County Commission and all of which apply <u>only</u> to the "owner or owners" of the land affected, Subsection **(h)** authorizes County Commissions to commence civil actions against either the "owner or owners of the private land or **other responsible party**" to secure the equitable relief authorized by that subsection of the statute.

112.    W. Va. Code § 7-1-3ff does not define the term "other responsible party."  However, the terms "responsible party" or "responsible person," when used within the context of federal or state remedial environmental and public health protection law and litigation matters, have come, in the more than forty (40) years since the enactment of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C.§§ 9601-9675 (commonly referred to as "**CERCLA**" or the "federal Superfund Act") and the related State "Superfund" or Hazardous Substance Cleanup Acts[36], to have a widely and commonly accepted meaning within both the Environmental Bar and the Environmental Engineering professional communities; namely, those four (4) classes of **Persons** described as liable pursuant to **CERCLA** § 107(a),

---

[36]    As evidence of this commonly accepted meaning, two (2) distinct provisions of the W. Va. Hazardous Waste Emergency Response Act, W. Va. Code, Chapter 22, Article 19 (commonly known as the "WV Superfund Act"), namely W. Va. Code §§ 22-19-5(c) and (e), employ the term "responsible person" notwithstanding the fact that term is nowhere defined in that Act.

42 U.S.C. § 9607(a).

**113. CERCLA** § 107(a), 42 U.S.C. 9607(a)[37], imposes strict liability for recovery of necessary "Response Costs" (*i.e.,* costs incurred in investigating and responding to hazardous substances that have been released into the ***Environment***) upon the following four (4) classes of persons:

    **(1)** the current owner and operator of a vessel or a facility;

    **(2)** any person who at the time of disposal (*i.e.,* the "discharge, deposit, dumping, spilling, leaking," *etc.* into the environment) of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

    **(3)** any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

---

[37] **CERCLA** § 107(a) provides, in relevant part:

    **(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date.**

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

    **(1)** the owner and operator of a vessel or a facility,

    **(2)** any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

    **(3)** any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

    **(4)** any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

**(A)** all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

**(B)** any other necessary costs of response incurred by any other person consistent with the national contingency plan;

**(C)** damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

**(D)** the costs of any health assessment or health effects study carried out under section 104(i).

**(4)** any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

114.    With respect to the Public Nuisance conditions resulting from the **Hazardous Waste**, **Wastes**, and **Pollutants or Contaminants Released** from the **Remedial Defendants' Facility** (*i.e.,* the tractor trailer involved in the crash/Hazardous Materials Spill Event herein at issue) into the **Environment** within the **Subject Watersheds**, each of the **Remedial Defendants** is a "responsible person" within the meaning of W. Va. Code § 7-1-3ff(h) because each was at the time of the **Release** an **Owner or Operator** of the **Facility** from which the **Release** into the **Environment** occurred.

115.    Pursuant to W. Va. Code § 7-1-3ff(h)(4), the Governmental Plaintiff is entitled to appropriate Declaratory and corresponding Injunctive Relief requiring the **Remedial Defendants**, jointly and severally, timely to reimburse the Governmental Plaintiff for:  **(1)** all **Abatement Action Costs** incurred by Fayette Co. with respect to its **Response** to *Public Nuisance* conditions at and emanating from within the **Subject Watersheds** at issue herein; and **(2)** all reasonable attorneys' fees and court costs incurred in connection with the prosecution of this civil action.

<u>**COUNT SIX:**</u>

**"DIRECT ACTION" PURSUANT TO SECTION VI(j) OF THE FCoWV PUBLIC NUISANCE ABATEMENT ORDINANCE TO ESTABLISH THE LIABILITY OF THE INSURER DEFENDANT HEREIN TO PAY FOR OR PERFORM THE REMEDIAL LIABILITIES IMPOSED UPON EITHER OR BOTH OF THEIR INSUREDS, REMEDIAL DEFENDANTS GG&WLLC AND DENNIS EUGENE WEST, BY THAT ORDINANCE SUBJECT ONLY TO THE REMAINING LIMITS OF LIABILITY, WHERE APPLICABLE, UNDER, AND THE TERMS AND CONDITIONS OF, THE LIABILITY INSURANCE POLICY THE INSURER DEFENDANT ISSUED TO THOSE INSUREDS**

(***Governmental Plaintiff against the Insurer Defendant***)

116.    The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint as if fully set forth herein.

117.    Under specific terms and conditions, Section **VI(j)** of the **FCoWV Public Nuisance Ordinance** authorizes the Governmental Plaintiff <u>only</u> to prosecute a "Direct Action" against the liability insurer of any liable **Person** under that Ordinance that is, *inter alia*, a dissolved or defunct business entity:

> **(i)  Direct action against Indemnitor or Insurer of a Liable or Potentially Liable Person:**
>
> > **(1)** ***Allowed in certain cases***:  **In any case or circumstance identified in Paragraph (4) of this Subsection VI(j) any liability of such Person arising under this Ordinance may be asserted directly against the Indemnitor or Insurer of any such Person;** provided, however:
> >
> > > **(A)** in the case of any claim or action pursuant to this section **VI(j)** of this Ordinance, such **Indemnitor or Insurer** is entitled to invoke or assert all rights, claims, and defenses:  **(i)** which would have been available to such liable or potentially liable **Person** if such action had been brought directly against the liable or potentially liable **Person** by Fayette County; and ***(ii)*** which would have been available to the **Indemnitor or Insurer** if an action had been brought against the **Indemnitor or Insurer** by such liable **Person** or potentially liable **Person** as a putative indemnitee or insured; and
> > >
> > > **(B)** the total liability of any **indemnitor or Insurer** of any such liable or potentially liable **Person** under this Ordinance is limited to the aggregate amount provided to, or on behalf of, the indemnitee or insured pursuant to the indemnification contract or decree, or the insurance contract or policy, specifically including any amount of coverage for any Remedial Investigation/Feasibility Study obligation that is or may be available pursuant to the duty to defend afforded to the insured by any such indemnification agreement or policy of insurance.  Nothing in this subparagraph **(B)** limits any statutory, contractual or common law liability under any other state or federal law of a guarantor or insurer to its guarantee or insured, including, but not limited to, the liability of such guarantor for bad faith either in negotiating or in failing to negotiate the settlement of any claim.
> >
> > **(2)** ***Judgment enforceable only against available proceeds or limits of coverage; exception:***  Unless properly joined with a claim authorized by Paragraph (3) of this Section **VI(j),** a judgment in the favor of Fayette County Commission in any action brought directly against the **Indemnitor or Insurer** of any deceased

individual or the estate of any decedent pursuant to this subsection **Vl(j)** is enforceable only from the indemnification proceeds or available insurance coverage, and not against other property of such **Person.**

(3) **Joinder with other specified claims authorized:**  Any claim asserting any liability arising under this Ordinance directly against the **Indemnitor or Insurer** of any deceased individual or the estate of any decedent pursuant to this Section **VI(j)** may be joined with a claim under applicable state law seeking recove1y of any undistributed assets, other than insurance assets or third-party indemnification proceeds, of the estate of the decedent.

(4) **Cases in which a Direct Action is authorized:**  A Direct Action authorized by this Subsection **VI(j)** may be brought by the Fayette County Prosecuting Attorney, or by the Code Enforcement Agency, with the advice and consent of the Fayette County Prosecuting Attorney, and shall be brought in the name of the Fayette County Commission by the Fayette County Prosecuting Attorney when directed by the Fayette County Commission, only in any case or circumstance where a **Person** liable or potentially liable under this Ordinance is:

(i) in bankruptcy reorganization, or arrangement pursuant to the federal bankruptcy code;

(ii) **is a dissolved or defunct business organization of any kind;**

\*\*\*          \*\*\*          \*\*\*          \*\*\*          \*\*\*

(5) Nothing in this subsection **VI(j)** diminishes the liability of any **Person** under other applicable law.

**Id.**  [Bolding emphasis added].

118.   **Remedial Defendant** GG&WLLC is a dissolved and defunct business entity within the meaning of **Section VI(j)(4)(ii)** of the **FCoWV Public Nuisance Ordinance**.

119.   **Insurer Defendant Integon** is legally responsible for all of the liability insurance benefits provided and proceeds made available pursuant to liability insurance policy No. FCA00000100931-00 that provide liability insurance coverage to **Remedial Defendants** GG&WLLC and DENNIS EUGENE WEST for the "property damage" and for all "Public Liability" and "Covered Pollution Costs or Expenses" liability imposed upon either of its Named Insureds, **Remedial Defendants** GG&WLLC or DENNIS EUGENE WEST, with respect to the conditions of ***Public Nuisance*** that each such **Remedial Defendant** caused or contributed to

within the **Subject Watershed** by applicable federal and West Virginia law, specifically including the FCoWV Public Nuisance Abatement Ordinance.

**120.** Pursuant to Section **VI(j)** of the FCoWV Public Nuisance Abatement Ordinance, the **Insurer Defendant** may, at its option, herein:

> **(i)** defend either or both of its Insureds, GG&WLLC or DENNIS EUGENE WEST, against some or all of the liability asserted against either or both herein;

> **(ii)** assert against the Governmental Plaintiffs herein any contractual coverage defenses available to it pursuant to the valid terms and conditions of the liability insurance policy it issued to Named Insureds, GG&WLLC or DENNIS EUGENE WEST; or

> **(iii)** both defend its Named Insureds, GG&WLLC or DENNIS EUGENE WEST, against some or all of the liability asserted against either of them herein, <u>and</u> assert any contractual coverage defenses available to it pursuant to the valid terms and conditions of the liability insurance policy(ies) it issued to its Named Insureds, **Remedial Defendants** GG&WLLC or DENNIS EUGENE WEST.

**121.** Subject only to the remaining limits of liability, where applicable, under liability insurance policy No. FCA00000100931-00, and to the valid terms and condition of that liability insurance policy, the **Governmental Plaintiff** asserts that it is herein entitled to: **(1)** a Declaratory Judgment establishing the liability and obligation of each **Insurer Defendant**, jointly and severally, to pay to Fayette County the **Abatement Action Costs** incurred and to be incurred by Fayette Co. for performing, or to itself perform, the remedial liabilities properly imposed upon its Named Insureds, **Remedial Defendants** GG&WLLC or DENNIS EUGENE WEST, herein; and **(2)** corresponding, appropriate injunctive relief compelling each **Insurer Defendant** timely to pay to Fayette Co. the **Abatement Action Costs** it has properly incurred with respect to the remedial liabilities properly imposed upon its Named Insureds, **Remedial Defendants** GG&WLLC or DENNIS EUGENE WEST, herein.

**COUNT SEVEN:**

**DAMAGES FOR INJURY TO, LOSS OF, AND DESTRUCTION OF**
***NATURAL RESOURCES* WITHIN FAYETTE COUNTY PURSUANT TO**
**SECTION VI(a)(1-9)(E) & (h) OF FAYETTE COUNTY PUBLIC**
**NUISANCE ABATEMENT ORDINANCE**
(***Governmental Plaintiff against each Remedial Defendant***)

122.    The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint as if fully set forth herein.

123.    At present and while appropriate remedial investigation and **Response** actions properly to **Respond** to and abate the Public Nuisance conditions in the **Subject Watersheds** alleged herein are ongoing, soil, subsurface soils, surface waters, sediments and groundwater within the **Subject Watersheds** remain contaminated with the **Hazardous Wastes**, **Solid Wastes**, and **Pollutants or Contaminants**, and **Waste Released** into the ***Environment*** as a direct result of the crash/Hazardous Materials Spill Event at issue herein.

124.    The **Hazardous Wastes**, **Pollutants or Contaminants**, and **Waste Released** from Defendants' **Facility** (*i.e.*, the truck involved in the crash/Spill Event) in Fayette Co. remaining in the soils and surface water sediments within the **Subject Watersheds** continue to be a source of ongoing contamination of the groundwater and surface waters within the **Subject Watersheds**.

125.    ***Natural Resources*** in the **Subject Watershed**, specifically including groundwater and surface waters, have been injured, destroyed and lost, are being injured, destroyed and lost, and will continue to be injured, destroyed and lost as a result of the **Discharges** of **Hazardous Wastes**, **Pollutants or Contaminants**, and **Waste Released** in whole or in part from Defendants' **Facility** in Fayette County until those **Discharges** and the endangerments to the Public Health, Safety, Welfare and the ***Environment*** presented by them have been appropriately abated.

126.    Fayette Co. has incurred, and will likely continue to incur **Abatement Action Costs** and

*Natural Resource* Damage Assessment costs, and the Public will continue to incur damages, including lost value, loss of use of water, and reasonable assessment costs, for the *Natural Resource* within the **Subject Watersheds** that has been, or may be, injured, as a result of the *Discharges* of *Hazardous Wastes*, *Pollutants or Contaminants*, and *Waste Released* from the **Remedial Defendants'** *Facility* in Fayette Co.

127. Pursuant to Sections **VI(a)(1-9)(E) and (h)** of the FCoWV Public Nuisance Abatement Ordinance each Defendant is jointly and severally liable to Fayette Co., acting as Trustee on behalf of the Public, for damages for injury to, destruction of, and loss of *Natural Resources*, including the reasonable costs of assessing such injury, destruction, and loss resulting from the *Public Nuisance* conditions within Fayette County alleged herein.

<u>**COUNT EIGHT:**</u>
**UNJUST ENRICHMENT**
(*Governmental Plaintiff against each Remedial Defendant*)

128. The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint as if fully set forth herein.

129. Defendants have failed to fully perform or fund the necessary and proper Public Nuisance **Remedial Investigation** and *Abatement Action Costs* and the necessary and proper *Natural Resource* Damage Assessment costs required to provide adequate protection of the Public Health, Safety, Welfare and the **Environment** from the actual or threatened endangerments that are or may be presented as a result of the **Hazardous Waste**, **Pollutants or Contaminants** and **Waste Released** into the **Environment** from Defendants' **Facility** (*i.e.,* the tractor trailer involved in the crash/Hazardous Materials Spill Event) in the **Subject Watersheds** alleged herein.

130. As set forth in detail herein, the Governmental Plaintiff has the legal authority and

responsibility under applicable law to provide adequate protection of the Public Health, Safety, Welfare and the ***Environment*** within Fayette County, WV**,** and to abate and cause to be abated, *inter alia*, aforementioned and described *Per Se* Public Nuisance conditions existing and threatened within the **Subject Watersheds**.

131.    By undertaking necessary **Responses**, including necessary **Remedial Investigations** into the nature and extent of, the *Per Se* **Public Nuisance** conditions existing and threatened within the **Subject Watersheds** alleged herein, the Governmental Plaintiffs have incurred necessary expense to respond to the *Per Se* Public Nuisance conditions existing within the **Subject Watersheds** caused entirely by the **Remedial Defendants**, and in so doing has conferred and is conferring an economic benefit on each of the **Remedial Defendants** in consequence of the interest of each Defendant in that same property, which interest arises from each **Remedial Defendant's** liability, jointly and severally, for all costs incurred and to be incurred for the timely and competent investigation and abatement of the Public Nuisance conditions that they each created and to which they each contributed.

132.    The Governmental Plaintiff's expenditure of public funds to investigate and respond to the existing and threatened Public Nuisance conditions in the **Subject Watersheds** alleged herein, which would otherwise be the **Remedial Defendants'** obligation to fully fund or perform, has unjustly enriched the **Remedial Defendants**.

## IX.  <u>PRAYER FOR RELIEF</u>*:*

WHEREFORE, the Governmental Plaintiff, in discharge of its statutory authority and responsibility to provide adequate protection of the Public Health, Safety, Welfare and the ***Environment*** within Fayette County, and to abate or secure the abatement of conditions of ***Public Nuisance*** within Fayette County, respectfully requests this Court award to it the following relief

with respect to the causes of action asserted herein:

A. Pursuant to the West Virginia common law of Public Nuisance Abatement and Section **XXII** of the **FCoWV Public Nuisance Ordinance**, an Order of this Court requiring each Remedial Defendant, jointly and severally:

(a) forthwith to pay to the "August 24, 2022 Hazardous Material (*i.e.*, EMPIGEN® AS/F90, CAS # 68140-01-2) Spill Event Sub Fund" of the "Fayette County Environmental and Public Health Protection Special Fund" created by Formal Order No. 2022-001 of the Fayette County Commission the amount determined by this Court to be due and payable as Public Nuisance **Abatement Action Costs** and total *Natural Resource* Damage Assessment Costs incurred by Fayette Co. (an any other West Virginia Governmental Agency authorized to respond to the August 24, 2022 Hazardous Material (*i.e.*, EMPIGEN® AS/F90, CAS # 68140-01-2) Spill Event as of the date of that determination by this Court;

(b) to deposit into the "August 24, 2022 Hazardous Material (*i.e.*, EMPIGEN® AS/F90, CAS # 68140-01-2) Spill Event Sub Fund" of the "Fayette County Environmental and Public Health Protection Special Fund" the total amount of the invoiced future **Abatement Action Costs** incurred by the Governmental Plaintiff to commence and complete both: **(1)** a **Remedial Investigation** and **Feasibility Study** ("**RI/FS**") of the full nature and extent of the Hazardous Waste contamination within the **Subject Watersheds** resulting from the Hazardous Materials Spill Event at issue herein and all endangerments to health or the **Environment** that are or may be presented by that **Released** contamination in full compliance with the applicable requirements of the **NCP** and Section **IX** of the FCoWV Public Nuisance Abatement Ordinance, as determined by this Court; and **(2)** a *Natural Resource* Damage Assessment regarding all damages for injury to, destruction of, or loss of *Natural Resources* with Fayette Co. resulting from the Public Nuisance created by or resulting from the August 24, 2002 Hazardous Materials Spill Event at issue herein, and with respect to which costs the **Remedial Defendants** have not timely and properly objected.

(c) forthwith to deposit into "August 24, 2022 Hazardous Material (*i.e.*, EMPIGEN®

AS/F90, CAS # 68140-01-2) Spill Event Sub Fund" of the "Fayette County Environmental and Public Health Protection Special Fund" the total amount of the projected, reasonable costs of the Fayette Co. Code Enforcement Agency timely and competently to implement such immediate removal or interim remedial actions that the Court may determine to be necessary and proper to appropriate abatement of any ***Public Nuisance*** condition(s) or imminent and substantial endangerments to health or the ***Environment*** within the **Subject Watersheds**; if any, as determined by this Court;

    **(d)**   following filing by the Fayette Co. Code Enforcement Agency of the required Final **RI/FS** Report and Responsiveness Summary regarding the results of the required Public Comment on that Final Report with this Court, and after conduct of such hearings as the Court determines to be appropriate, forthwith to deposit into the "August 24, 2022 Hazardous Material (*i.e.*, EMPIGEN® AS/F90, CAS # 68140-01-2) Spill Event Sub Fund" of the "Fayette County Environmental and Public Health Protection Special Fund" the total amount of the projected, reasonable costs of the Fayette Co. Code Enforcement Agency timely and competently to undertake and complete the **Remedial Action Plan**, if any, for the Public Nuisance Conditions at and emanating from the **Subject Watersheds** selected and approved by the Court; and **(d)** periodically and timely to reimburse the Governmental Plaintiff for the **Abatement Action Costs** it has incurred in overseeing and monitoring performance of the **Abatement Actions** ordered by this Court which the Court has allowed the **Remedial Defendants** to perform;

    **B.**  Pursuant to Sections **VI(i)** and **XXII(b)(5)** of the FCoWV Public Nuisance Abatement Ordinance, Entry of a Declaratory Judgment on Defendants' liability, jointly and severally, for recovery of **Response Costs**, **Abatement Action Costs**, and ***Natural Resource*** Damage Assessment Costs that will be binding on any subsequent action or actions by the Governmental Plaintiff to recover further **Response Costs**, ***Abatement Action Costs***, or ***Natural Resource*** Damage Assessment Costs to be incurred by the Governmental Plaintiff in compliance

with the Orders of this Court with respect to the conditions of ***Public Nuisance*** within the **Subject Watersheds** herein at issue;

C.    Pursuant to Federal Rule of Civil Procedure 56 and in furtherance of the goals of timely and effective implementation of the complex and continuing, mandatory injunctive relief required herein pursuant to the principles articulated in the holding of the U.S. District Court for the Southern District of W. Va. in *Ohio Valley Envtl. Coal.* v. *Fola Coal Co., LLC*, Case No. 2:15-cv-01371 (S.D. WV) (Chamber, C.J.) (September 27, 2017 Order on Plaintiff's Motion for Appointment of a Special Master), entry of an Order of Reference to a Special Master appointed by this Court and authorized:  **(i)** to see to the timely and effective implementation of this Court's Orders herein; **(ii)** to adjudicate in the first instance any disputes between the parties regarding implementation of this Court's Orders and any requests for contempt sanctions, and to make a report to the Court reflecting the Special Commissioner's Findings of Fact, Conclusions of Law and Recommended Order respecting such matters, which Order will be binding upon all parties to such adjudications as an Order of this Court unless application to this Court for review of such Order is timely filed and such Order is modified or vacated by this Court;

D.    Pursuant to W. Va. Code §7-1-3ff(h)(4) and Sections **XX(f)** and **XXII(c)** of the Fayette Co. Public Nuisance Abatement Ordinance, an award to the Governmental Plaintiffs and against each of the **Remedial Defendants**, jointly and severally, of the Governmental Plaintiffs' non-duplicative[38] costs of this litigation, including attorneys' and expert witness fees and cost

---

[38]   Regarding their claims for an award of its litigation costs, including its attorneys' fees and expert witness fees and costs incurred, pursuant to W. Va. Code § 7-1-3ff(h)(3) and (4) and Sections **XX(f)** and **XXII(c)** of the Fayette Co. Public Nuisance Abatement Ordinance, the Governmental Plaintiff seeks only an award of those litigation costs authorized by those laws that have not also been awarded to it as a recoverable **Abatement Action Costs**, if any, pursuant to applicable provisions of the Fayette Co. Public Nuisance Abatement Ordinance.

exclusively related to prosecution;

      **E.**    Pursuant to Section **VI(j)** of the FCoWV Public Nuisance Abatement Ordinance, a Declaratory Judgment and corresponding Injunctive Relief establishing the liability and obligation of the **Insurer Defendant** to pay to Fayette Co. the costs of the remedial liabilities properly imposed upon **Remedial Defendants** GG&WLLC or DENNIS EUGENE WEST herein, together with all sums for Litigation Costs properly awarded against such **Remedial Defendants** herein, subject only to the applicable limits of liability, as determined by applicable law, established by the liability insurance policy that the **Insurer Defendant** issued to the **Remedial Defendants**.

      **F.**    Pursuant to the West Virginia common law of Unjust Enrichment, an award to the **Governmental Plaintiffs** and against each **Defendant**, jointly and severally, of an equitable Order for Restitution for all reasonable sums, specifically including all technical, legal and other consulting costs, the Governmental Plaintiff has incurred and will incur to **Respond** to the ***Public Nuisance*** conditions at and emanating from the **Subject Watersheds** alleged herein, which the Governmental Plaintiffs has not recovered under any of it other Causes of Action herein, and which would otherwise be **Defendants'** obligation to fund or perform;

      **G.**    Pursuant to Section **VI(a)(1-9)(E) and (h)** of the FCoWV Public Nuisance Abatement Ordinance, an award to the to the Fayette County Commission as Trustee on behalf of present and future generations of the Public of all damages for injury to, destruction of, or loss of Natural Resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from a Public Nuisance within Fayette Co., which damages and costs shall, pursuant to the requirements of Section **VI(h)(1)** of the FCoWV Public Nuisance Abatement Ordinance, be held only in the "Fayette County Environmental and Public Health Protection Special Fund" created by Formal Order No. 2018-01 of the Fayette County Commission pursuant to its authority under

W. Va. Code § 7-1-9 and the recovered damages to be used **only** to restore, replace, or acquire the equivalent of such lost, injured or destroyed **Natural Resources**;

**H.**   As to all **Remedial Defendants**, jointly and severally, a non-duplicative award to the Governmental Plaintiff of prejudgment interest, pursuant to W. Va. and Fayette Co. law; and

**I.**   Such other and further relief as this Court deems proper and warranted.

**The Governmental Plaintiffs respectfully request that this Court retain continuing jurisdiction over this civil action to the extent necessary and for as long as necessary to interpret and enforce, and to secure and review the Defendants' compliance with, such Orders as this Court may enter herein.**

Respectfully submitted,

**ANTHONY CILIBERTI, ESQ.
FAYETTE CO. PROSECUTING ATTORNEY**

By:

Michael O. Callaghan  (WV Bar No. 5509)
Chief Assistant Fayette County Prosecuting Attorney
OFFICE OF THE FAYETTE COUNTY
   PROSECUTING ATTORNEY
ENVIRONMENTAL & PUBLIC HEALTH
   PROTECTION UNIT
c/o NEELY & CALLAGHAN
1337 Virginia Street East, STE 200
Charleston, WV  25301-3011
Telephone:  (304) 343-6500
Facsimile:  (304) 343-6528
E-mail:  mcallaghan@neelycallaghan.com

## VERIFICATION:

**State of West Virginia,**

**Kanawha County,**

to-wit:  Michael O. Callaghan, Esq. (WV Bar No. 5509), Chief Assistant Fayette Co. Prosecuting Attorney, Environmental and Public Health Protection Unit, being duly sworn, says that he has read the foregoing Verified Supplemental Complaint and that he knows the contents thereof; that the facts and allegations therein contained are true, except such as are therein stated upon information and belief, and that as to such allegations he believes them to be true.

Michael O. Callaghan, Esq.
Chief Assistant Fayette Co. Prosecuting Attorney
Environmental and Public Health Protection Unit

Taken, sworn to and subscribed before me this 23 day of May 2023

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BRANDY HEFLIN
Great Expectations Realty
1337 Virginia St E
Charleston WV 25301
My Commission Expires February 4, 2026